760 So.2d 1037 (2000)
OCÉ PRINTING SYSTEMS USA, INC., a Delaware corporation; Océ Printing Systems G.m.b.H., a German corporation; Siemens Nixdorf Printing Systems, L.P., a Limited Partnership; Siemens Credit Corporation, a Delaware corporation; Siemens Nixdorf Information Systems, Inc., a Massachusetts corporation; and Siemens-Nixdorf Informationssysteme AG, a German Corporation, Appellants,
v.
MAILERS DATA SERVICES, INC., a Florida corporation; The Bradshaw Group, a Texas corporation; ABOG, Inc., a California corporation, d/b/a Landmark Computer Group; Zar Corporation, a Minnesota corporation; Creative Automation Company, an Illinois corporation; and NCR Corporation, Appellees.
No. 2D99-3531.
District Court of Appeal of Florida, Second District.
June 16, 2000.
*1039 Marvin E. Barkin, Edward C. LaRose, and Marie Tomassi of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, Tampa; and Daniel I. Booker, Debra H. Dermody, and Michael E. Lowenstein of Reed Smith Shaw & McClay, LLP, Pittsburgh, Pennsylvania, for Appellants Océ Printing Systems USA, Inc., and Océ Printing Systems G.m.b.H.
Stephen C. Chumbris of Holland & Knight, LLP, St. Petersburg; and Kenneth A. Gallo, Jon R. Roellke, and Julia Symon de Kluiver of Rogers & Wells, LLP, Washington, D.C., for Appellants Siemens Nixdorf Printing Systems, L.P., Siemens Credit Corporation, Siemens Nixdorf Information Systems, Inc., and Siemens-Nixdorf Informationssysteme AG.
Aubrey O. Dicus and Stephen J. Wein of Battaglia, Ross, Dicus & Wein, P.A., St. Petersburg; Gregory S. Dovel of Dovel & Luner, LLP, Los Angeles, California; and Rodrigo De Llano of Lawson, Weiss & Danzinger, Houston, Texas, for Appellees Mailers Data Services, Inc.; The Bradshaw Group; ABOG, Inc.; Zar Corporation; and Creative Automation Company.
Chris S. Coutroulis and D. Matthew Allen of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa; Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg; and Mark E. Ferguson and Jason L. Peltz of Bartlit Beck Herman Palenchar & Scott, Chicago, Illinois, for Appellee NCR Corporation.
PARKER, Judge.
In this appeal, the appellants challenge the trial court's order certifying three separate nationwide classes in this complex antitrust case brought under the Florida Antitrust Act of 1980, sections 542.15-.36, Florida Statutes (1997) (the Antitrust Act), and the Florida Deceptive and Unfair Trade Practices Act, sections 501.201-.213, Florida Statutes (1997) (the Unfair Trade Act). We reverse.

THE PARTIES
The appellants, who were the defendants in the trial court, are various sellers, financiers, and servicers of ultra-high speed printers. Defendants Siemens Nixdorf Printing Systems, L.P.; Siemens Nixdorf Information Systems, Inc.; Siemens-Nixdorf Informationssysteme AG; and Siemens Credit Corporation (collectively "Siemens") manufactured, sold, financed, and serviced ultra-high speed printers until 1996. Defendants Océ Printing Systems USA, Inc., and Océ Printing Systems G.m.b.H. (collectively "Océ"), acquired this business from Siemens in 1996. Defendant NCR Corporation (NCR) services Siemens/Océ ultra-high speed printers in certain geographic locations pursuant to an agreement with Siemens/Océ.[1]
The Plaintiffs in the trial court were users and brokers of Siemens/Océ ultrahigh speed printers and independent service organizations that serviced, or desired to service, Siemens/Océ ultra-high speed printers. Plaintiffs Mailers Data Services, Inc. (Mailers Data), and Creative Automation Company (Creative Automation) use Siemens/Océ ultra-high speed printers in their businesses (End Users). Plaintiffs The Bradshaw Group (Bradshaw) and ABOG, Inc., doing business as Landmark Computer Group (Landmark), are independent service organizations (ISOs) that service these printers. Plaintiffs Bradshaw and Zar Corporation (Zar) broker the sale of used printers, including various Siemens/Océ models (Brokers).

COMPLAINT ALLEGATIONS
In 1997, the Plaintiffs filed their first amended complaint challenging the manner in which Siemens/Océ provided maintenance service, replacement parts, and lease financing. In count I, the Plaintiffs *1040 alleged that a 1993 agreement executed in Florida between Siemens/Océ and NCR created a "service cartel," which constituted an unlawful territory allocation that eliminated competition and forced End Users to pay higher prices for maintenance service and replacement parts. In count II, the Plaintiffs alleged that agreements between Siemens/Océ, NCR, and two parts manufacturers restricted distribution of replacement parts, which resulted in unlawful "group boycotts" of ISOs. The Plaintiffs also alleged that Siemens/Océ refused to provide lease financing and maintenance certifications to End Users who obtained service from ISOs, which resulted in unlawful "group boycotts" of certain End Users and which reduced sales opportunities for Brokers.
In count III, the Plaintiffs alleged that Siemens/Océ forced End Users who needed maintenance certifications, replacement parts, or lease financing to purchase maintenance service from Siemens/Océ, which constituted an unlawful tying arrangement[2] detrimental to End Users, ISOs, and Brokers. In counts IV and V, the Plaintiffs alleged that all of these business practices, combined with alleged disparagement of ISOs, had the effect of excluding ISOs from competing to provide maintenance service, replacement parts, and consumables for Siemens/Océ ultrahigh speed printers. The Plaintiffs sought damages and, in count VI, sought a permanent injunction to prevent all Defendants from continuing to engage in illegal and anticompetitive conduct.

CERTIFICATION ORDER
The Plaintiffs' complaint was styled as a class action, and the Plaintiffs sought to certify three nationwide classes: one class of End Users, one class of ISOs, and one class of Brokers. After limited discovery, the Plaintiffs filed a motion for class certification. Following a two-day hearing on the matter, the trial court entered an order certifying all three proposed classes for all claims asserted. Specifically, the trial court certified the following nationwide classes:
(1) The "End User Class," allegedly including approximately 600 members and consisting of all entities in the United States that were actual purchasers or users of Siemens/Océ ultra-high speed printers at any time between November 5, 1992, and the date of the trial court's order. The trial court designated Plaintiffs Mailers Data and Creative Automation as the representatives of this class.
(2) The "ISO Class," allegedly including approximately 100 members and consisting of all independent service organizations in the United States that were actual or potential competitors of Siemens/Océ in providing maintenance service, replacement parts, and/or consumables for Siemens/Océ ultra-high speed printers at any time between November 5, 1992, and the date of the trial court's order. The trial court designated Plaintiffs Bradshaw and Landmark as the representatives of this class.
(3) The "Broker Class," allegedly including approximately 100 members and consisting of all brokers in the United States that were actual or potential competitors of Siemens/Océ in selling or arranging for the sale or lease of used Siemens/Océ ultra-high speed printers at any time between November 5, 1992, and the date of the trial court's order. The trial court designated Plaintiffs Bradshaw and Zar as representatives of this class.
The trial court certified each class under the injunctive provisions of both Florida Rules of Civil Procedure 1.220(b)(1) and *1041 (b)(2), and the alternative provision of Florida Rule of Civil Procedure 1.220(b)(3).[3]

FLORIDA ANTITRUST ACT OF 1980
The trial court's order certifies nationwide classes seeking relief pursuant to the Antitrust Act. We conclude that the plain language of the Antitrust Act bars certification of a nationwide class in this instance.
Section 542.18, Florida Statutes (1997), states: "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." Section 542.19, Florida Statutes (1997), states: "It is unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce in this state." In both sections, the phrase "in this state" is placed so as to modify the terms "trade" and "commerce." Thus, it appears from the plain language of the Antitrust Act that it is aimed at regulating trade or commerce that occurs in Florida, regardless of where the contract, conspiracy, or monopoly occurs. It is the effect on trade that must occur in Florida, not the actions giving rise to the effect on trade.
This reading of the Antitrust Act is supported by both federal case law and the case law of other states with antitrust statutes identical to Florida's. See, e.g., Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (holding that the Sherman Act applies to foreign conduct that produces some substantial effect in the United States); Emergency One, Inc. v. Waterous Co., 23 F.Supp.2d 959, 970 (E.D.Wis.1998) (dismissing a case by a Florida plaintiff under the Wisconsin antitrust statute because there was no evidence of any adverse effect within the state of Wisconsin); Destec Energy, Inc. v. Southern Cal. Gas Co., 5 F.Supp.2d 433, 464 (S.D.Tex.1997) (holding that the plaintiffs could not sustain a claim under the Texas antitrust statute because there was no showing that Texas consumers suffered any adverse effects from conduct at issue), aff'd, 172 F.3d *1042 866 (5th Cir.1999); Baker v. Walter Reade Theatres, Inc., 37 Misc.2d 172, 237 N.Y.S.2d 795, 796 (1962) (holding that the New York antitrust statute did not apply to the plaintiffs case because the only adverse effects occurred in New Jersey).
Applying the Antitrust Act provisions to this case demonstrates that certification of a nationwide class was improper. The only proper class is one whose members suffered an injury due to adverse effects in the state of Florida arising from a restraint on trade. Contrary to the Plaintiffs' assertions, an End User in Chicago forced to do business with NCR in Chicago because of NCR's agreement with Siemens/Océ in Florida cannot state a claim under Florida's Antitrust Act. The Chicago End User is not affected by a restraint on trade or commerce within Florida; rather, the Chicago End User is affected by a restraint on trade or commerce in Illinois. Accordingly, the Chicago End User is not a proper class member. The only proper class members are End Users in Florida, ISOs in Florida, Brokers in Florida, and possibly some out-of-state entities that desired to do or did business in Florida.
Had the Plaintiffs chosen to allege violations of both the Sherman Act and the Antitrust Act, certification of a nationwide class might have been proper. Those entities suffering injuries outside Florida would have been subject to the Sherman Act while those entities suffering injuries within Florida would have been subject to the Antitrust Act. However, having chosen to invoke only the Antitrust Act, the Plaintiffs are limited to a class of those entities who suffered an injury because of the effect in Florida of the Defendants' anticompetitive conduct. Therefore, the order certifying a nationwide class pursuant to the Antitrust Act must be reversed.

FLORIDA UNFAIR TRADE ACT
The trial court's order also certified nationwide classes seeking relief pursuant to the Unfair Trade Act. Unlike the case with the Antitrust Act, nothing in the plain language of the Unfair Trade Act limits its application to injuries occurring in Florida. However, in Coastal Physician Services of Broward County v. Ortiz, 24 Fla. L. Weekly D299, ___ So.2d ___, 1999 WL 30699 (Fla. 4th DCA Jan. 27, 1999), the court concluded that the Unfair Trade Act was enacted to protect in-state consumers. "Other states can protect their own residents." Id. We agree that only in-state consumers can pursue a valid claim under the Unfair Trade Act.
The Plaintiffs point to several cases in which nationwide classes have been certified to argue that the trial court did not abuse its discretion in certifying such a class. See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); Broin v. Philip Morris Cos., 641 So.2d 888 (Fla. 3d DCA 1994); Cox v. Shell Oil Co., No. CIV. A. 18,844, 1995 WL 775363 (Tenn. Nov. 17, 1995). However, in those cases, none of the plaintiffs pursued claims under a state statutory scheme. Rather, the plaintiffs alleged claims under common law theories that could be applied nationwide. In contrast, the applicable statutes in this case limit who can bring an action under the statute. A nationwide class that allows entities to circumvent the express statutory language is impermissible. Therefore, the trial court's order certifying a nationwide class pursuant to the Unfair Trade Act must be reversed.
While certification of nationwide classes was improper, the Plaintiffs may be able to redefine their proposed classes to fall within the statutory provisions. Therefore, we remand this case to give the Plaintiffs the opportunity to do so. Since some of the remaining class certification issues raised by the Defendants may arise again on recertification, we address those issues in an effort to assist the parties and the trial court.

ABSENCE OF COMMON PROOF OF IMPACT
The Defendants argue that the trial court erred in certifying the classes under *1043 rule 1.220(b)(3) because there was insufficient evidence of a common impact or injury. We disagree.
When competitors at the same level of the market conspire to allocate territories in order to minimize competition, that action constitutes a horizontal restraint on trade which results in a per se violation of the antitrust statutes. See United States v. Topco Assocs., Inc., 405 U.S. 596, 607-08, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972); In re Carbon Dioxide Antitrust Litig., 149 F.R.D. 229, 234 (M.D.Fla. 1993). When horizontal conspiracies to restrain trade are alleged, "the questions common to the class predominate over questions that may affect only individual class members." In re Carbon Dioxide, 149 F.R.D. at 234. See also In re Master Key Antitrust Litig., 528 F.2d 5 (2d Cir. 1975); In re Alexander Grant & Co. Litig., 110 F.R.D. 528, 534-35 (S.D.Fla.1986). In this case, the Plaintiffs alleged several horizontal conspiracies, including allocating territories and price fixing. These allegations are sufficient to support the trial court's finding that common questions predominate under rule 1.220(b)(3).
The Defendants contend that allegations of a horizontal conspiracy are insufficient under Florida law to establish that common questions predominate, relying on Execu-Tech Business Systems, Inc. v. Appleton Papers, Inc., 743 So.2d 19 (Fla. 4th DCA 1999). However, the court in Execu-Tech did not reject the general proposition that common impact is presumed when an anticompetitive market exists. Rather, the court stated that this presumption was inapplicable in the context of a class of indirect purchasers. "[W]here class members purchase products in an anti-competitive market[,] injury to each can be presumed ... but we think that such presumption should not arise in indirect purchaser cases...." Id. at 22. In this case, there is no class of indirect purchasers; therefore, the reasoning of Execu-Tech is inapplicable.
The Defendants also challenge the legal sufficiency of the affidavit testimony of the Plaintiffs' expert, Weinstein. The Defendants' expert, Kaplan, took exception to Weinstein's opinions and argued that Weinstein's proposed methodology for determining common impact would not work. We conclude that Weinstein's affidavits provided sufficient evidence from which the trial court could find that the Plaintiffs had established a methodology grounded on sound economic principles for determining common impact.
Kaplan also expressed his opinion that certain End Users, ISOs, and Brokers did not suffer any actual injury based on their individual circumstances. Based on this testimony, the Defendants assert that the trial court erred in certifying the class. This assertion is incorrect for two reasons. First, the primary focus of the trial court's inquiry at the class certification stage is liability, not damages. See In re Carbon Dioxide, 149 F.R.D. at 234. The issue of individual damages will not defeat an otherwise valid class certification. Id. Second, the trial court resolved the factual disputes between Weinstein and Kaplan concerning common impact and actual injury in favor of Weinstein and based its legal conclusions on the resolution of that factual dispute. The trial court did not abuse its discretion in reaching this conclusion.

CERTIFICATION OF A CLASS SEEKING INJUNCTIVE RELIEF
The Defendants next contend that the trial court erred in certifying the classes under rule 1.220(b)(1) and (b)(2). They base this argument on two grounds, neither of which has merit.
First, the Defendants contend that certification under rule 1.220(b)(1) was improper because the trial court's finding that there was a threat of inconsistent adjudications conflicted with its finding that the class members had no interest in pursuing individual litigation. Regardless *1044 of whether any suits are currently pending, the trial court correctly found that if individual class members instituted litigation, the risk of inconsistent adjudications establishing incompatible standards of conduct would arise. Rule 1.220(b)(1) does not require a finding that such inconsistent adjudications have occurred. Rather, the rule requires a finding that if the proposed class members decided to prosecute separate claims, the risk would arise. See Fla. R. Civ. P. 1.220(b)(1)(A). The trial court did not abuse its discretion in making this finding based on the nature of the claims and possible relief involved in this case.
Second, the Defendants contend that the trial court abused its discretion in certifying the class under rule 1.220(b)(2) because the predominant relief requested is monetary. It is true that five of the six counts in the Plaintiffs' first amended complaint seek monetary relief. The remaining count seeks an injunction permanently enjoining the Defendants from engaging in anticompetitive conduct. Unlike the situations in the cases cited by the Defendants, the Plaintiffs' injunction count does not seek monetary damages through the roundabout method of an injunction requiring the disgorgement of illegal profits. Rather, the Plaintiffs seek actual injunctive relief. Therefore, the trial court did not abuse its discretion in certifying the class under rule 1.220(b)(2).

CONFLICTS OF INTEREST
The Defendants next contend that conflicts of interest exist between the classes and within the classes, making certification improper. We conclude that the record supports certification of the End User class and the Broker class; however, the ISO class should not have been certified due to intra-class conflicts.
As an initial matter, there is no evidence of actual conflict between the three certified classes. Each of the classes seeks to establish that the Defendants' anticompetitive conduct impacted the service industry for Siemens/Océ ultra-high speed printers. The Defendants correctly point out that the classes may have different strategies during the damages phase of the case; however, the trial court's order specifically contemplates decertification at the damages phase. Therefore, there is no genuine conflict between the classes that would make certification improper.
As to conflicts within each class, the Defendants do not assert that there is a conflict within the Broker class. Therefore, we conclude that certification of that class was proper. As to the End User class, the Defendants argue that the representative plaintiffs have no interest in pursuing injunctive relief because they are not currently purchasing service from the Defendants. This ignores the fact that the representative plaintiffs may seek service from the Defendants in the future, thus giving them an interest in ensuring that the alleged anticompetitive conduct does not continue. Further, differences in the nature and scope of the relief requested do not affect the common interest in establishing liability. Therefore, certification of the End User class was not an abuse of discretion.
As to the ISO class, however, there is a conflict within the class that makes certification of the class as it is now defined improper. The ISO class currently includes ISOs that exclusively sell Siemens/Océ replacement parts and ISOs that exclusively buy Siemens/Océ replacement parts. The conduct challenged in this action benefits those ISOs who sell replacement parts and harms those ISOs who buy replacement parts. Those ISOs who benefit from the alleged current conduct cannot adequately represent the interests of those ISOs who are harmed by that same conduct. See Pickett v. IBP, Inc., 182 F.R.D. 647, 653 (M.D.Ala.1998); Telecomm Technical Servs., Inc. v. Siemens Rolm Communications, Inc., 172 F.R.D. 532, 545-46 (N.D.Ga.1997). Therefore, the trial court's finding that there was no conflict within *1045 the ISO class was improper, and certification of the ISO class as currently defined constituted an abuse of discretion. In Telecomm, the trial court gave the class plaintiffs the opportunity to attempt to redefine the ISO class in such a way as to eliminate the conflicts. See Telecomm, 172 F.R.D. at 545. We conclude that the Plaintiffs should be given such an opportunity in this case.

CLAIMS FOR TYING, GROUP BOYCOTT, AND MONOPOLIZATION
Finally, the Defendants contend that the trial court erred in certifying any classes for claims based on allegations of tying arrangements, group boycotts, and monopolization because those claims will require individualized proof, thus making class treatment improper. The Defendants' arguments make it clear, however, that individualized proof will arise only in the context of damages, not liability. As the trial court properly found, all of the alleged anticompetitive practices can be established through common proof. "[C]ontentions of infinite diversity of product, marketing practices, and pricing have been made in numerous [antitrust] cases and rejected. Courts have consistently found the conspiracy issue the overriding, predominant question ... The issue of individual damages will not defeat an otherwise valid class certification attempt." In re Infant Formula Antitrust Litig., MDL 878, 1992 WL 503465 at *6 (N.D.Fla. Jan.13, 1992). While the resulting damages may require individualized proof, that will not prevent class certification for purposes of liability. See In re Carbon Dioxide, 149 F.R.D. at 234.
The Defendants also contend that the Plaintiffs cannot prove their tying claims because they cannot prove that the Defendants forced End Users to buy the tied products. This argument fails for two reasons. First, matters of proof that go to the merits of the claim are inappropriate when considering class certification. Second, tying claims require only proof that the tying condition existed and that the defendant had market power in the tying product. See Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 461-62, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Thus, individual proof of force or coercion is unnecessary at the liability stage.
The record reflects that the Plaintiffs may be able to establish liability for their tying, group boycott, and monopolization claims through common proof. Whether the Plaintiffs will be successful before a jury is a matter that is irrelevant at the class certification stage. Based on the record evidence, the trial court did not err in certifying these claims for class treatment.

CONCLUSION
We reverse the trial court's order to the extent that it certifies a nationwide class and an ISO class. Because every class was certified as a nationwide class, the effect of this decision is to reverse the entire order certifying the class. However, we remand this case to the trial court to allow the Plaintiffs the opportunity to redefine the classes in such a way as to allow for certification.
Reversed and remanded.
CAMPBELL, A.C.J., and STRINGER, J., Concur.
NOTES
[1] NCR settled with the Plaintiffs/Appellees prior to the class certification hearing. Therefore, while NCR was a defendant below, it is not an appellant before this court.
[2] For there to be an unlawful tying arrangement, there must be two separate products: a tying product and a tied product. Under a tying arrangement, the buyer cannot obtain the tying product without either purchasing the tied product from the seller or agreeing not to purchase the tied product from any other supplier. See Northern Pac. Ry. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); Times-Picayune Publ'g Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953).
[3] That rule states:

Rule 1.220. Class Actions
. . . .
(b) Claims and Defenses Maintainable. A claim or defense may be maintained on behalf of a class if the court concludes that the prerequisites of subdivision (a) are satisfied, and that:
(1) the prosecution of separate claims or defenses by or against individual members of the class would create a risk of either:
(A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate; or
(3) the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions shall be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.