804 So.2d 383 (2001)
Michael and Melissa STONE, Appellants,
v.
COMPUSERVE INTERACTIVE SERVICES, INC., a Delaware Corporation, Appellee.
No. 4D00-4295.
District Court of Appeal of Florida, Fourth District.
October 3, 2001.
*385 Byron G. Petersen of Petersen & Hawthorne, P.A., Fort Lauderdale, for appellants.
Joseph P. Klock, Jr., Janet T. Munn, and Susan Torres of Steel Hector & Davis LLP, Miami, and Thomas E. Gilbertsen of Collier Shannon Scott, PLLC, Washington, DC, for appellee.
GROSS, J.
Michael and Melissa Stone appeal both the trial court's (1) denial of their motion for class certification in their action against CompuServe Interactive Services, Inc.; and (2) granting of CompuServe's motion for summary judgment dismissing their complaint. We affirm the denial of class certification and reverse the dismissal of the complaint.
The Stones' suit against CompuServe asserted declaratory judgment and breach of contract claims on behalf of themselves and a nationwide class of similarly situated plaintiffs. At issue was a $400 rebate CompuServe offered to consumers who purchased certain computers and signed up for three years of internet service with CompuServe.
The complaint alleged that CompuServe failed to pay promised rebates within the time frame provided by its contract with the Stones and other similarly situated consumers. The pleading defined two classes of rebate applicants: (1) those who did not receive a rebate; and (2) those who received the rebate "in an untimely fashion." The rebate program promotional materials and "mail-in" application forms indicated that consumers should allow "8-10 weeks from rebate approval" to receive a rebate. To apply for the rebate, consumers had to complete and timely submit an authorized rebate application.
After the complaint identified the two classes of rebate applicants, count I sought declaratory relief to define the term "approval" as used in the CompuServe materials and to determine a "reasonable time" for CompuServe's performance. Count II sought damages for breach of contract for failing to perform within the "reasonable time" determined by the court.
After some discovery, the trial court conducted an evidentiary hearing on the Stones' motion for class certification. By the time of the hearing, CompuServe had moved for summary judgment.
The Stones purchased a qualifying computer on August 26, 1999. Using a promotional CD provided with the computer, they logged onto CompuServe and subscribed for three years of internet service at a cost of $21.95 per month. Michael Stone used his credit card to sign up for the internet service.
On August 27, 1999, Michael Stone completed a mail-in application and mailed it to the address provided. By the end of October, the Stones had not received a rebate, so they contacted CompuServe to ask about it. CompuServe customer service *386 representatives advised the Stones that their credit card was over its credit limit and there had been difficulty billing the card for monthly service fees.
CompuServe records showed that a rebate check was sent to Mr. Stone in November, 1999. However, by that time he had moved from Fort Walton Beach to Niceville, Florida. He never received the check. Ultimately, the Stones received a $400 rebate check on February 19, 2000, two weeks before filing their lawsuit.
At the hearing on the motion for class certification, the Stones presented affidavits from aggrieved consumers and from a "webmaster" who had created an internet site at the Stones' direction for consumers to lodge complaints about CompuServe's rebate program. They produced 430 complaints from consumers who had not received rebates or who had received them in an untimely manner. The Stones presented newspaper articles in which CompuServe representatives admitted that between one and ten percent of the rebate payments were late.
CompuServe offered the testimony of two employees from its marketing department. Their testimony focused on the factors a court might consider in determining whether a consumer had received a rebate within a "reasonable time."
Under the rebate program, consumers received a rebate application from the store where they purchased a qualifying computer. As the trial court found:
This "mail-in" rebate application requires a customer to provide certain information to qualify for a rebate. The customer installs [the internet service] software on [the] new computer before filling out the mail-in rebate application form. The installation is done first to ensure that the customer's new [internet service] member name is written on the rebate application form when submitted. The new member name is required to confirm that an applicant has signed up for the [internet service]. The customer also must provide information such as his or her name, address and telephone number, credit card number and type, and the UPC bar code number from the computer box. The customer must also sign the rebate application form, and provide a copy of the computer purchase sales receipt with the signed rebate application. Applications are directed to a post office box provided on the rebate application form.
CompuServe hired a coupon fulfillment company, Gage Marketing Services, Inc., to administer some portions of the program. Gage collected the applications from the post office box, and reviewed them for completeness. If an application was incomplete, Gage rejected it by sending a letter to the applicant explaining what additional information was needed and providing a toll-free phone number for the customer to call to obtain more information. Gage recorded some information from each application into a computer data base and transmitted the data to Compu-Serve for further processing.
CompuServe reviewed the data it received from Gage to determine that: (1) there was a valid member name in its databank that matched the member name given on the rebate application; (2) the account had not been terminated or the credit card rejected; (3) the member registered with a valid promotion code; (4) the member had not already received a rebate; (5) the account had not already been canceled or terminated by Compu-Serve; (6) the member registered after July 1, 1999; (7) the applicant submitted a useable screen name; (8) the member was maintaining the account in good standing without an outstanding balance; and (9) *387 the credit card remained valid through one additional twenty-eight day billing cycle.
If an application failed one of these criteria, CompuServe rejected it and directed Gage to send a letter to the customer explaining why the application was rejected and what could be done to correct the situation.
The trial court considered CompuServe's testimony that
the particular reason any individual rebate application [was] rejected necessarily affect[ed] how long it [took] for an application to be approved, assuming any defects in the originally rejected application [were] cured. Accordingly, the time it [took] for an applicant to receive a rebate check varie[d] depending, first, on whether the initial application was correct and, second, whether the credit card on the account remained valid. If an application include[d] erroneous or missing information, the reason an application [was] rejected and how an applicant respond[ed] to the notice are additional factors that impact[ed] how long it [took] to approve and award a rebate check to any individual applicant.
Without making any finding that CompuServe's rebate approval procedures were reasonable or that the company paid any particular applicant within a reasonable time, the trial court denied the Stones's motion to certify and granted CompuServe's motion for summary judgment in a detailed thirty-two page order.
The main issue in this appeal is the propriety of the court's denial of class certification under Florida Rule of Civil Procedure 1.220. A party seeking class certification has the burden of pleading and proving each element required under rule 1.220. Execu Tech Bus. Sys., Inc. v. Appleton Papers, Inc., 743 So.2d 19, 21 (Fla. 4th DCA 1999) (citations omitted), rev. denied, 763 So.2d 1042 (Fla.2000). The trial court must conduct a rigorous analysis to determine whether the elements of the class action rule have been satisfied. Id. at 21-22. Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995). In making this analysis, the trial court may look beyond the pleadings and, without resolving disputed issues, determine how disputed issues might be addressed on a class-wide basis. See Rutstein v. Avis Rent A Car Sys., Inc., 211 F.3d 1228, 1234 (11th Cir. 2000). The question of whether to grant or deny certification is committed to the broad discretion of the circuit court. See Execu Tech, 743 So.2d at 20 n. 1.
The prerequisites of any class action are that
(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.
Fla. R. Civ. P. 1.220(a). This case is appropriately analyzed under rule 1.220(b)(3), which requires that
the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. *388 Fla. R. Civ. P. 1.220(b)(3)[1]; see Humana, Inc. v. Castillo, 728 So.2d 261, 266 (Fla. 2d DCA), rev. dismissed, 741 So.2d 1134 (Fla. 1999).
A threshold inquiry as to whether class certification should be granted is whether the Stones had standing to represent the purported members of the class. See W.S. Badcock Corp. v. Webb, 699 So.2d 859, 860-61 (Fla. 5th DCA 1997); Taran v. Blue Cross Blue Shield of Fla., Inc., 685 So.2d 1004, 1006 (Fla. 3d DCA 1997) (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)) ("[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").
The Stones received their rebate prior to filing suit. They did not have standing to seek class certification on behalf of purported class members who had never received any rebate.
The remaining potential class involves those consumers who were "unreasonably" delayed in receiving their rebates under their contracts with CompuServe. A breach of contract claim may be appropriate for class treatment. See Indianer v. Franklin Life Ins. Co., 113 F.R.D. 595, 607 (S.D.Fla.1986). However, we agree with the trial court's conclusion that "common issues of fact and law do not predominate over the ... different factual and legal issues at the core of each class member's claims." As the trial court wrote:
Each rebate applicant's history is unique and CompuServe's liability for "late," "untimely" or "unreasonable" performance simply cannot be adjudicated by looking to the class as a whole. Florida courts have found the necessary quanta of common questions of fact when all the members of the purported class behaved in a way similar to each other, and the defendant acted towards each member of the class in a similar way. Estate of Bobinger, et al. v. Deltona Corp., 563 So.2d 739, 743 (Fla. 2d DCA 1990); Latman, et al. v. Costa Cruise Lines N.V., et al., [758 So.2d 699] (Fla. 3d DCA 2000) (class certified where cruise line systematically kept a pass-through port charge paid by each consumer); McFadden v. Staley, et al., 687 So.2d 357 (Fla. 4th DCA 1997) (class certified where defendant acted towards each class member in a similar manner) (other citation omitted).... This is not the case here, where putative class members were all treated differently, had different experiences, different periods of delay (some substantial, some minor) and for different reasons.
The court needs to look at how [the breach of contract] issue will be litigated in the context of a class action. Is there one body of evidence that will resolve the issue for all class members, or will a mini-trial be required to determine whether each class member performed [their obligations under the contract]? Clearly, the answer is that the latter procedure will be necessary to determine whether CompuServe is liable to each member of the class.
[Such] a class action is not manageable and should not be certified.... Such is clearly the case here, where each individual applicant's history would need to be explored in order to determine, among other things, (a) when the applicant submitted a rebate application, (b) whether it was initially correct and complete, (c) if CompuServe rejected the application because of errors or invalid *389 credit card, (d) whether CompuServe's rejection was valid or not, (e) whether and when each rebate applicant corrected any errors, (f) how long thereafter it took CompuServe to pay a rebate to each customer, and (g) whether the period of any resulting delay was significant enough to impose liability on Compu-Serve. All of this would be done under different bodies of state law, depending upon where the contract was formed.... Moreover, a large number of customers who complained about late rebates were inadvertently paid two rebate checks. CompuServe would have a right to set-off against such customers.
Another rule 1.220(b)(3) problem identified by the trial court is that common issues of law do not predominate over the different legal issues at the core of each class member's claim. The rebate promotional materials did not contain a choice of law provision. Under Florida conflict of law rules, "the nature, validity and interpretation of contracts, are to be governed" by the law of the state where the contract is made or performed. Wingold v. Horowitz, 292 So.2d 585, 586 (Fla.1974) (quoting Perry v. Lewis, 6 Fla. 555 (1856)). Florida has insufficient contacts with the purported class members of other states to justify the application of Florida's contract law to a nationwide class.
This case is distinguishable from Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. 4th DCA 1999). That case involved a deceptive trade practice suit against a cruise line for charging excessive port fees in addition to the cruise price. In contrast to the limited ties to the nationwide class in this case, we found in Renaissance that Florida's significant contacts to the case made application of Florida law appropriate:
[The cruise line's] principal place of business is in Florida, and thousands of Florida plaintiffs have been allegedly harmed by [the cruise line's] port charge practice. For the most part, [the cruise line's] U.S. business operations are controlled and carried out from Broward County where payment for the cruises was made. The port charges generally were paid to the various foreign ports through checks issued out of Fort Lauderdale. Therefore, any overages were kept by [the cruise line] in Fort Lauderdale. The cruise ticket contract and marketing information originated in Broward county and bore [the cruise line's] Fort Lauderdale address. Moreover, the tickets provided that Broward County courts would have jurisdiction over disputes. This is indicative of the parties' mutual expectation that Florida law would apply to the transaction. Florida clearly has a significant contact with the claim of overpayment of port charges made by each claimant. There is nothing arbitrary nor fundamentally unfair in applying the law of Florida to all of the members of the class.
Id. at 439. In Renaissance, a single statute applied to all claims, so there was a predominance of common legal issues.
As the trial court held in this case, the differences in state law governing different plaintiffs' claims "vary to such an extent that common issues of law would not predominate in a nationwide class." The trial court noted that the states
employ differing approaches to the question of whether late performance constitutes a material breach of contract. For example, under California law delay in performance is a material breach only if the contract specifies that time is of the essence (citations omitted). New York law is likewise (citations omitted). Under Oklahoma law, when time is not of the essence a plaintiff must show an "unreasonable, inexcusable or unjustifiable delay in performance" to establish a material breach and the mere lapse of *390 time is not necessarily enough to form the basis for contract liability.
(Citations omitted).
The record supports the trial court's ruling that the Stones failed to carry their burden under subsections (a)(2) and (b)(3) of rule 1.220. There was no abuse of discretion.
On the issue of the summary judgment on the Stones's individual claim, issues of fact remain. If CompuServe's payment to the Stones was so unreasonably late that it amounted to a breach of contract, then the Stones would be entitled to interest as compensation for the loss of use of the money. See Zucker v. Sears Roebuck & Co., 589 So.2d 454, 455 (Fla. 5th DCA 1991) (observing that prejudgment interest is "restitution to compensate a plaintiff for the loss of use of its money over the period of time that a plaintiff is wrongfully deprived of the use of that money"). A finder of fact must determine the date before which CompuServe was required to remit payment under its contract with the Stones and decide whether CompuServe breached that contractual obligation, taking into consideration the claimed November, 1999, tender and the February, 2000, payment that the Stones ultimately received. See Maingate Dev., Inc. v. Lakeview Mktg. Group, Inc., 758 So.2d 1290, 1291 (Fla. 4th DCA 2000). Even though the amount of any such loss is tiny in a breach of contract case, the minimal amount of damages is not a basis for dismissal.
The order denying class certification is affirmed. The final summary judgment is reversed.
STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] We agree with the trial court's conclusion that rules 1.220(b)(1)(A), 1.220(b)(1)(B), and 1.220(b)(2) are not applicable to the type of class action involved in this case.