837 So.2d 1090 (2003)
Jacqueline HUTSON and Ruthe Blecher, Appellants,
v.
REXALL SUNDOWN, INC. and John Does 1-10, individually and trading as Sundown, Inc., Appellees.
No. 4D02-687.
District Court of Appeal of Florida, Fourth District.
February 19, 2003.
Scott Shepherd of Shepherd, Finkelman, Miller & Shah, LLC, Ft. Lauderdale and *1091 Donna Siegel Moffa, Trujillo, Rodriguez & Richards, LLC, Haddonfield, NJ, for appellants.
Gerry S. Gibson of Steel, Hector & Davis LLP, West Palm Beach, for appellee.
DELL, JOHN W., Senior Judge.
Jacqueline Hutson and Ruth Blecher appeal from the trial court's order denying their motion to certify a nationwide class action against appellee, Rexall Sundown, Inc. We affirm without prejudice to appellants seeking a limited class in accordance with this opinion.
Appellant Hutson filed an amended complaint for damages and other relief on behalf of herself and a nationwide class of purchasers of appellee's products known as "Calcium 900" and "Calcium 1200."[1] She alleged that appellee's labelling and point-of-purchase advertising constituted deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, part II, Florida Statutes (FDUTPA), and that these practices resulted in unjust enrichment to appellee.
She further alleged that appellee's labels and point of purchase marketing represented to consumers that each Calcium 900 and Calcium 1200 tablet [softgel] contained 900 and 1200 milligrams of calcium, respectively, when in fact, each softgel contained only 300 milligrams and 600 milligrams of calcium, respectively. Hutson claimed that because each softgel contained less calcium than the amount represented, the cost of a daily dose of calcium was more than represented, and that she did not receive the amount of calcium appellee led her to believe she was receiving. In the motion for class certification and to add appellant Blecher as a party plaintiff, it is alleged that appellant Blecher also bought Calcium 900 and took one softgel per day thinking she was getting 900 milligrams of calcium.
Rexall denied the allegations and raised numerous defenses, including that the labels for each of the products at issue had usage instructions that set forth directions for use, and the number of softgels per serving.[2] At the certification hearing, appellee argued, among other things, that appellants, having purchased only Calcium 900, could not represent purchasers of Calcium 1200; that appellants could not represent those persons who were not deceived by the point of purchase advertising; that the FDUTPA should not be applied to claims of non-Florida residents; and that the motion to certify a national class action should be denied.
The trial court found that appellants failed to satisfy the typicality, adequacy, predominance, superiority, and manageability requirements of rule 1.220(a) and (b), Florida Rules of Civil Procedure, and denied the motion for class certification. The trial court granted the motion to join appellant Blecher as a party plaintiff.
Our standard for review is whether the trial court abused its discretion when it denied appellants' motion to certify a national class action (excluding certain residents of New Jersey) of all of those persons who purchased Rexall Sundown's *1092 Calcium 900 and Calcium 1200 within the six years prior to December 3, 1998. See Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. 4th DCA 1999); Jenne v. Solomos, 707 So.2d 1203 (Fla. 4th DCA 1998).
The elements of a class action claim or defense are set forth in rule 1.220 Florida Rules of Civil Procedure. Under rule 1.220(a), a party must establish that: "the members of the class are so numerous that separate joinder of each member is impracticable" (numerosity); "the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class" (commonality); "the claim or defense of the representative party is typical of the claim or defense of each member of the class" (typicality); and that "the representative party can fairly and adequately protect and represent the interests of each member of the class" (adequacy).
In addition to the requirements of rule 1.220(a), a party seeking class certification must also establish one of the three alternative requirements of rule 1.220(b). Here, appellants sought class certification pursuant to rule 1.220(b)(3), which requires that: "questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class" (predominance); and "class representation is superior to other available methods for the fair and efficient adjudication of the controversy" (superiority). Rule 1.220(b)(3) also provides that conclusions as to predominance and superiority "shall be derived from consideration of all relevant facts and circumstances, including ... (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class" (manageability).

Typicality
Appellants contend that the trial court abused its discretion when it concluded that they failed to satisfy the typicality and adequacy requirements of rule 1.220(a). They cite Davis v. Powertel, Inc., 776 So.2d 971 (Fla. 1st DCA 2000), rev. denied, 794 So.2d 605 (Fla.2001) in support of their argument that the trial court mistakenly applied a reliance standard when it determined that appellants failed to establish typicality.
In Davis, Powertel sold cellular telephones without disclosing to the consumers that the telephones had been programed to work only with its wireless communications service. The plaintiffs brought an action pursuant to FDUPTA on behalf of a class of those persons who had purchased the modified phones. The trial court denied class certification because the plaintiffs could not show that all of the purchasers had relied on Powertel's alleged failure to disclose the phones had been modified. The district court reversed, holding that:
All of the claims share one essential common feature; that is, the alleged defective [sic] practice reduced the value of the telephones. Because proof of reliance is unnecessary, the plaintiffs' inability to show reliance in every case cannot be used to justify a finding that individual issues will predominate over the class claims. Issues pertaining to the proof of the alleged deceptive practice and issues relating to causation and damages will be common to all members of the class.
Id. at 975.
The facts of this case are distinguishable from those considered in Davis. Here, the trial court did not apply a reliance standard in determining typicality but rather found that those persons who read the labels could not claim damages *1093 because they had actual knowledge of the specific number of softgels needed to be taken per serving. The trial court concluded that the claims of those persons who bought the softgels without reading the labels differed from those persons who had actual knowledge of the amount of calcium in each softgel. See General Motors Acceptance Corp. v. Laesser, 718 So.2d 276, 277 (Fla. 4th DCA 1998)(reversing a verdict in favor of the plaintiff in a FDUPTA claim upon concluding that "to be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer").
Based on the facts of this case, a person who had actual knowledge of the number of softgels needed to be taken per serving would not have suffered any damages as a result of the alleged deceptive trade practice and, therefore, would have no cause of action. Consequently, we hold that the trial court did not abuse its discretion when it concluded that appellants failed to satisfy the typicality requirement of the rule. The class appellants sought to represent included both persons who may have a claim under FDUPTA and persons who have no claim under FDUPTA because they have suffered no damage as a result of appellee's allegedly deceptive practices.

Adequacy
Appellants challenge the trial court's adequacy determination arguing that the trial court abused its discretion when it determined that appellants could not maintain a class action on behalf of those persons who had purchased Calcium 1200 because appellants had only purchased Calcium 900. Appellants maintain that it is irrelevant that neither of them had purchased Calcium 1200 since the purchasers of both Calcium 900 and Calcium 1200 were victims of an alleged common deceptive marketing scheme. We disagree. Rule 1.220 does not empower appellants to bring a class action on behalf of the users of Calcium 1200 because appellants could not have maintained such an action individually.

Factual Issues Predominate & Manageability
We also disagree with appellants' contention that the trial court abused its discretion when it concluded that individual factual issues predominate that preclude class certification. The trial court found that appellants' claims under FDUPTA and for unjust enrichment depend upon resolutions of predominant individualized fact issues. The record supports the trial court's conclusion that "an individualized fact inquiry must be made for each class member to determine if he or she read the label and its usage instructions prior to purchase, or otherwise knew how much elemental calcium was contained in each softgel for the product purchased...." Because the proposed class includes consumers who had actual knowledge of the amount of calcium contained in each softgel, we hold that the trial court correctly concluded that a class action would be unmanageable because individual factual issues would predominate.

Questions of Law Predominate
Appellants next contend that the trial court abused its discretion when it concluded that common questions of law would not predominate in a nationwide class action because the laws of 49 other states would apply to the claims of non-residents. Appellants cite Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. 4th DCA 1999), and argue that FDUTPA applies to non-residents and, therefore, common questions of law would predominate in a nationwide class action. In Renaissance, the cruise line challenged a non-final order certifying a nationwide *1094 class of cruise travelers who claimed that Renaissance had engaged in a deceptive trade practice by charging a port charge in addition to the cruise price. Renaissance claimed "that there were insufficient contacts with Florida to warrant application of Florida law to the entire class so that common questions of law and fact would predominate over individual claims." 738 So.2d at 439. This court rejected Renaissance's argument and determined that there were sufficient contacts with Florida to warrant application of Florida law to the entire class. The contacts considered in Renaissance included the fact that the cruise ticket marketing information originated in Broward county and the tickets contained a forum selection clause that provided that Broward county courts would have jurisdiction over disputes. Renaissance is also distinguishable from the facts of this case because, as found by the trial court, "the common injury occurred in Florida."
Appellants cite Millennium Communications & Fulfillment, Inc. v. Office of the Attorney General, 761 So.2d 1256 (Fla. 3d DCA 2000), in support of their argument that Renaissance superseded this court's decision in Coastal Physician Services of Broward County, Inc. v. Ortiz, 764 So.2d 7 (Fla. 4th DCA 1999). We disagree. In Coastal, this court addressed a discovery issue as it applied to a class action for violation of FDUPTA and the Consumer Protection Act. On rehearing, this court limited discovery to Florida residents and stated that "we conclude that these acts are for the protection of in-state consumers from either in-state or out-of-state debt collectors. See, e.g., §§ 501.202(303); 559.55(6), Fla. Stat. (1997). Other states can protect their own residents as Florida itself does with regard to out-of-state collectors." Id. at 7. As distinguished from Renaissance, the injuries claimed in Coastal occurred both within the state of Florida and outside of the state of Florida. See also Oce Printing Sys. USA, Inc. v. Mailers Data Serv., Inc., 760 So.2d 1037 (Fla. 2d DCA 2000), and Montgomery v. New Piper Aircraft, Inc., 209 F.R.D. 221 (S.D.Fla.2002).
The facts of this case are similar to those considered in Stone v. CompuServe Interactive Services, Inc., 804 So.2d 383 (Fla. 4th DCA 2001). In Stone, the plaintiffs, in a breach of contract action, sought certification of a nationwide class of persons who failed to receive, or received untimely, a rebate offered by Compuserve in nationwide advertising. This court held that the contracts were completed when the individual purchasers bought their computers, and the contract law of the state where that occurred would properly apply. This court distinguished Renaissance, concluding that in Renaissance, there were sufficient contacts with Florida to justify the application of Florida substantive law to a nationwide class and that "a single statute [FDUPTA] applied to all claims so that there was a predominance of common legal issues." Stone, 804 So.2d at 389.
Here, the alleged deceptive unfair trade practice involved the nationwide sale of products with a misleading label and with misleading point of purchase marketing techniques. The claims asserted in the national class action occurred both in the state of Florida and in 49 other states. The alleged wrong was committed, and the damage done, at the site of the sale of appellees' products; that is, in the various states where members of the purported class made their purchases. We hold that the trial court correctly concluded that common issues of law do not predominate because the claims of non-resident consumers would require the application of consumer protection laws from each of the states where the deceptive trade practice occurred and the non-resident claimants suffered injury.
*1095 Accordingly, we affirm the trial court's denial of appellants' motion to certify a nationwide class action of all purchasers of Rexall Sundown Calcium 900 and Calcium 1200 during the six years prior to December 3, 1998. Our affirmance is without prejudice to appellants seeking certification in the trial court of a class limited to Florida consumers and defined in a manner consistent with this opinion.
AFFIRMED.
POLEN, C.J. and WARNER, J., concur.
NOTES
[1] The proposed nationwide class excludes certain residents of New Jersey. A New Jersey court denied a motion to certify a similar nationwide class action against appellee. The New Jersey court did, however, certify a class limited to residents of New Jersey who purchased Calcium 900 and Calcium 1200 believing that each softgel capsule contained 900 milligrams and 1200 milligrams of calcium respectively.
[2] During the period encompassed by this suit, the instructions on the Calcium 900 label stated in part: "SUGGESTED ADULT USAGE: As a dietary supplement, take three (3) softgels daily. SUGGESTED ADULT USAGE PROVIDES: 900 mg. of Liquid Calcium ..."