898 So.2d 153 (2005)
CHASE MANHATTAN MORTGAGE CORP., Appellant,
v.
Dale A. PORCHER and Stanley Parker, individually and on behalf of all others similarly situated, Appellees.
No. 4D03-4451.
District Court of Appeal of Florida, Fourth District.
March 9, 2005.
*154 Rodolfo Sorondo, Jr. and Ilene L. Pabian of Holland & Knight LLP, Miami, Scott B. Newman of Holland & Knight LLP, West Palm Beach, and LeAnn Pedersen Pope and Robert J. Emanuel of Burke, Warren, MacKay & Serritella, P.C., Chicago, IL, for appellant.
Paul J. Geller and Douglas Wilens of Geller Rudman, PLLC, Boca Raton, and Howard K. Coates, Jr. of The Coates Law Firm, Royal Palm Beach, for appellees.
TAYLOR, J.
Chase Manhattan Mortgage Corporation challenges a trial court order granting class certification in an action alleging, inter alia, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), §§ 501.201 et seq., Florida Statutes. The class action seeks damages and injunctive and declaratory relief for the mortgage service's alleged wrongful assessment of late fees on mortgage payments that the plaintiffs contend were actually received on time. We conclude that the trial court erred in certifying the class because individual liability issues predominate over common questions and because the class lacks the cohesiveness necessary for injunctive or declaratory relief.

The Facts
The named plaintiffs, Dale A. Porcher and Stanley Parker, sued Chase Manhattan Mortgage Corporation (Chase), alleging that the defendant had a deliberate practice of charging them unwarranted late fees for mortgage payments that were timely received before the expiration of their grace period. The plaintiffs moved to certify the following class pursuant to Florida Rule of Civil Procedure 1.220:
All persons residing or owning property in the State of Florida who currently have or have had mortgage loans owned or serviced by CMMC and who were assessed late charges for mortgage payments that were timely received by *155 CMMC prior to the expiration of the contractually set "grace period"....
Following a hearing on the plaintiffs' motion, the trial court certified the above class of Chase customers. Chase appeals from the class certification order.
Each month, Chase services approximately 2.8 million mortgage payments nationwide and 300,000 from the State of Florida through its payment-processing vendor, Bank One Arizona N.A. ("Bank One"). Florida customers mail their monthly mortgage payments to a lockbox in Louisville, Kentucky, which is administered by Bank One pursuant to its "Retail Lockbox Processing Agreement" with Chase.
The mortgage agreements allow Chase to collect a late fee if the payment is not received within the customer's grace period. If a customer's mortgage payment grace period expires on Sunday or a holiday it is extended to the next business day. For payments received during the grace period but processed after the grace period expires, Chase uses an "effective dating" procedure which back-dates the payment to the date of its receipt so that no unwarranted late fee is charged. This "effective date" procedure is standard industry practice.
Dale Porcher's mortgage was serviced by Chase. His mortgage payment is due the first of each month, but he has a fifteen day grace period, so that his payment is not late if it is received by Chase's lockbox on or before the sixteenth of the month. On January 15, 1999, Porcher sent his payment express mail, overnight delivery, but was charged a late fee nonetheless. When he called and complained, the late charge was reversed.
On December 12, 2000, Porcher again sent his payment express mail, guaranteed next day delivery. His receipt shows that the December 2000 payment was timely received, yet he was still charged a late fee by Chase. In all, Porcher has accumulated eight separate late fees totaling $430.96. He sent the other payments by regular U.S. mail and has no proof that any of the other payments were received timely. He concedes that approximately three of the eight late payments were correctly charged, but maintains that the other five were errors by Chase.
Stanley Parker joined the action as a named plaintiff by amendment. Parker's situation is slightly more complicated. His loan also calls for payments on the first of the month, with a fifteen day grace period. Parker complains about three late fees for the months of March, April, and May of 2001. Parker initially claimed that on March 10, 2001 he sent Chase his payment by U.S. mail, which should have reached Louisville by March 16, 2001. However, when Parker was confronted with copies of the money orders he sent, he acknowledged that he actually had not even purchased the money orders until March 13, 2001. At his deposition, he first admitted that Chase had properly charged him a late fee for March 2001, then later in the deposition claimed that he "might" have used priority mail for the March payment, thus making the late fee incorrect. Chase's records show that the payment was not received until March 19, 2001.
Parker alleged that in April 2001 he sent his payment on the tenth of the month by priority mail, 2-3 day delivery. He has no receipt for the mailing. According to Chase, Parker was not assessed a late fee for this payment.
Parker further alleges that in May 2001 he sent two money orders for his payment by U.S. mail on the fifth or sixth of the month, but was nonetheless charged a late fee. After this litigation was filed, Chase discovered that the May payment, comprised *156 of two money orders, arrived separately. One money order was received on May 14, 2001 and the other received on May 16, 2001. Thus, the payment should have been credited as timely. Chase has since attempted to reverse this charge, although Parker claims that it failed to make a full credit.
The amended class action complaint alleges that Chase has a deliberate policy of failing to post mortgage payments on the same date they were received so that it can charge unwarranted late fees. The complaint seeks relief under Florida's Deceptive and Unfair Trade Practices Act, for breach of contract, breach of an implied covenant of good faith and fair dealing, unjust enrichment, and a declaratory judgment. The first four counts each seek damages and unspecified declaratory and/or injunctive relief. The declaratory judgment count alleges doubts about the plaintiffs' rights under the mortgage loan agreements. Since engaging in some limited discovery, the plaintiffs have modified their claim of an intentional policy of misconduct, and now assert that Chase has exercised inadequate control or oversight over the dating procedures.

General Principles Governing Class Certification
Class certification is governed by Florida Rule of Civil Procedure 1.220. Under rule 1.220(a), a plaintiff must establish that the proposed class satisfies four requirements: numerosity, commonality, typicality and adequacy. In addition, a class proponent must also satisfy one of the three alternatives set out in rule 1.220(b). In this case, appellants challenge the trial court's class certification under rule 1.220(b)(2) and (b)(3).
The question of whether to grant or deny certification is committed to the broad discretion of the circuit court. Stone v. Compuserve Interactive Servs., Inc., 804 So.2d 383, 387 (Fla. 4th DCA 2001). The movant for class certification bears the burden of establishing all the requirements of Florida Rule of Civil Procedure 1.220. Earnest v. Amoco Oil Co., 859 So.2d 1255 (Fla. 1st DCA 2003). The trial court is required to apply a "rigorous analysis" to the request. Id. The decision to certify should be made carefully because it considerably expands the dimensions of the lawsuit and commits the court and the parties to much additional labor. Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995).
"[T]he trial court may look beyond the pleadings and, without resolving disputed issues, determine how disputed issues might be addressed on a classwide basis." Earnest, 859 So.2d at 1257-58; see also In re Tri-State Crematory Litig., 215 F.R.D. 660, 688 (N.D.Ga.2003)(stating that the court will scrutinize the evidence plaintiffs propose to use in proving their claims, ensuring through information submitted outside the pleadings that the requirements of the certification rule are met, not whether plaintiff's claims are viable); Blihovde v. St. Croix County, Wisc., 219 F.R.D. 607, 617 (W.D.Wis.2003) (stating that the judge should make whatever factual and legal inquiries are necessary for certification, and when these questions overlap with the merits of the case, the judge must make a preliminary inquiry into the merits).
Doubts about certification should be resolved in favor of certification, particularly at the early stages of the litigation. Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D.Mass.2003); Adair v. England, 209 F.R.D. 5, 8 (D.D.C.2002). Because Florida's class action rule is based on Federal Rule of Civil Procedure 23, Florida courts may generally look to federal cases as persuasive authority in their *157 interpretation of rule 1.220. Seven Hills, Inc. v. Bentley, 848 So.2d 345, 352-53 (Fla. 1st DCA 2003).

The Damages Claims
Rule 1.220(b)(3) must generally be met in actions which predominantly seek damages. Rule 1.220(b)(3) provides, in pertinent part, that a class is certifiable under that section when "the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class ...".
The subsection (b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In Liggett Group, Inc. v. Engle, 853 So.2d 434, 449 (Fla. 3d DCA 2003), rev. granted, 873 So.2d 1222 (Fla.2004), the court quoted from 7a Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535-39 (2d ed.1986)(footnotes omitted):
[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate ...
In Liggett Group the court found that even though there was a "common nucleus of fact" concerning the defendant's conduct, the smokers' case presented a multitude of individualized issues which made it particularly unsuited to class treatment. 853 So.2d at 450.
In Stone, 804 So.2d at 388, we reviewed a class claim that a computer company had unduly delayed in satisfying customer rebate claims. We agreed with the trial court that:
Each rebate applicant's history is unique and Compuserve's liability for "late," "untimely" or "unreasonable" performance simply cannot be adjudicated by looking to the class as a whole.... The court needs to look at how [the breach of contract] issue will be litigated in the context of a class action. Is there one body of evidence that will resolve the issue for all class members, or will a mini-trial be required to determine whether each class member performed [their obligations under the contract]? Clearly, the answer is that the latter procedure will be necessary to determine whether CompuServe is liable to each member of the class. [Such] a class action is not manageable and should not be certified....
Id.
This case is similar to Stone in that it would require the very sort of mini-trials on liability that we found necessary in that case. Here, as in Stone, class members' claims cannot be determined by class-wide proof.
Perhaps the most factually similar case cited by the parties is Ploog v. HomeSide Lending, 2001 WL 1155288 (N.D.Ill.2001). There the plaintiff alleged that her lender had not corrected her escrow account problem in a timely fashion. In support of her class action she alleged that the lender had a pattern of untimely responses to such requests. The court held that a class was not certifiable because of the fact-intensive individual inquiries required to determine liability as to each plaintiff, stating that "class certification is consistently denied in transaction-specific cases such as the one at bar." Id. at *7.
A factually different but instructive case on this issue of requiring individual determinations for class members' claims is In *158 re Agricultural Chemicals Antitrust Litigation, 1995 WL 787538 at *11 (N.D.Fla.1995). There, the federal district court refused certification of an antitrust suit, stating:
The need to examine an "overwhelming number of transactions" to determine which plaintiffs suffered an actual injury would pose a "great burden" and render this case "unmanageable as a class action," raising a "host of individual questions." Mekani v. Miller Brewing Co., 93 F.R.D. 506, 512 (E.D.Mich.1982).
Id.
Further, as the court noted in Jim Moore Insurance Agency, Inc. v. State Farm Mutual Auto. Insurance Company, 2003 WL 21146714 at *8 (S.D.Fla.2002) (quoting Alabama v. Blue Bird Body Co., 573 F.2d 309, 328 (5th Cir.1978) (Fay, J.)):
[I]f the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent.
In Humana, Inc. v. Castillo, 728 So.2d 261, 266 (Fla. 2d DCA 1999), the court stated that in ruling on the predominance question the trial court must determine whether the purported class representatives can prove their own individual cases and, by doing so, necessarily prove the cases for each one of the thousands of other members of the class. "If they cannot, a class should not be certified." Id. As Chase points out, the individual plaintiffs in this case cannot prove each other's cases, let alone the cases of hundreds of thousands of absent class members. Though both plaintiffs allege that they were improperly charged a late fee for timely received mortgage payments, the evidence relevant to Porcher's claim is not relevant to Parker's claims or the claims of the other class members.
The plaintiffs cite case law which holds that the need for proof of individualized damages will not bar a class action on predominance grounds. See, e.g., Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc., 760 So.2d 1037, 1043 (Fla. 2d DCA 2000). However, plaintiffs' reliance on this authority is misplaced where, as here, individualized proof of liability is every bit as necessary as individualized proof of damages. In this class action, a single individual issue will predominate, namely whether each individual borrower's payments were received within the grace period. Because this case fails the predominance test, we must reverse certification under rule 1.220(b)(3). See Rutstein, 211 F.3d at 1228 (reversing certification of civil rights complaint against rental car company); Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999 (11th Cir.1997) (vacating certification of civil rights complaint against motel chain); see also Hammett v. Amer. Bankers Ins. Co., 203 F.R.D. 690, 699 (S.D.Fla.2001) (stating that claims would require distinctly case-specific inquiries into the facts surrounding each alleged increase in debt, late fees, over limit fees and increased interest rates in refusing certification).

Injunctive and Declaratory Relief
Chase argues that the injunctive and declaratory relief certified under Rule 1.220(b)(2) must meet a "cohesiveness" requirement. There are several federal cases which support this cohesiveness requirement for (b)(2) classes. See Holmes v. Cont'l Can Co., 706 F.2d 1144, 1158 (11th Cir.1983); In re Baycol Prods. Litig., 218 F.R.D. 197, 211 (D.Minn.2003); Jim Moore Ins., 2003 WL 21146714 at *15-16; Hammett, 203 F.R.D. at 696; see *159 also Arch v. Amer. Tobacco Co., 175 F.R.D. 469 (E.D.Pa.1997).
As the Baycol Products court explained:
Although there is no predominance or superiority requirement under this subdivision, the Court must nonetheless determine whether individual issues exist among the class members, which would destroy the cohesive nature of the class claims.... A class will not be cohesive if factual differences amongst the class members "translate into significant legal differences." Barnes [v. Amer. Tobacco Co., 161 F.3d 127, 143 (3rd Cir.1998)].
218 F.R.D. at 211.
In Jim Moore, 2003 WL 21146714 at *15, the court explained the cohesiveness theory, as follows:
"At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness.... The members of a(b)(2) class are generally bound together through `pre-existing or continuing legal relationships' or by some significant common trait such as race or gender" that transcends the specific set of facts giving rise to the litigation. Holmes v. Cont'l Can Co., 706 F.2d 1144, 1155 n. 8 and 1156 (11th Cir.1983).
As the Eleventh Circuit explained in Holmes:
[S]ubsection (b)(2) was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices.... Subsection (b)(2) "by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests."
Id. at 1155 (citation and internal quotations omitted).
Because there is no pre-existing relationship between borrowers and they do not share any common characteristic, the injunctive class lacks cohesiveness. As such, the certification of the (b)(2) class must also be reversed.
REVERSED and REMANDED for further proceedings consistent with this opinion.
STONE and HAZOURI, JJ., concur.