743 So.2d 19 (1999)
EXECU-TECH BUSINESS SYSTEMS, INC., SBD, Inc. and Stanley Roth, individually and on behalf of all others similarly situated, Appellants,
v.
APPLETON PAPERS INC., et al., Appellees.
No. 98-0188.
District Court of Appeal of Florida, Fourth District.
January 6, 1999.
Rehearing Denied October 27, 1999.
*20 Robert C. Gilbert of Robert C. Gilbert, P.A., Coral Gables; Daniel E. Gustafson and Renae D. Steiner of Heins, Mills & Olson, P.L.C., Minneapolis, Minnesota; Kenneth A. Wexler of Miller, Faucher, Chertow, Cafferty and Wexler, Chicago, Illinois; and Joseph R. Saveri and Fabrice V. Nijhof of Lieff, Cabraser, Heimann & Bernstein LLP, San Francisco, California, for Appellants.
Chris S. Coutroulis, Robert L. Ciotti and D. Matthew Allen of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for Appellee Appleton Papers Inc.
Ignacio Sanchez and Richard E. Donovan of Kelley, Drye & Warren LLP, Miami, for Appellee Kanzaki Specialty Papers.
PER CURIAM.
Despite the apparent complexity of the underlying litigation, the relatively simple issue in this non-final appeal is whether the trial court abused its discretion[1] in denying appellants' motion for class certification. We hold that it did not, and affirm.
Appellants, consumers of thermal facsimile (fax) paper, sought damages from appellees on behalf of a class defined as "all persons and entities (but excluding defendants) that purchased thermal fax paper in Florida between February 1990 and March of 1992, for their own use and not for resale." Appellants did not bring their claim under Florida or federal antitrust laws, but rather alleged that defendants violated Florida's Deceptive and Unfair Trade Practices Act by conspiring to fix (and fixing) the price of jumbo roll thermal fax paper, causing consumers to pay more for fax paper than they would have in the absence of the alleged illegal conduct.[2]
Appellants' motion for class certification alleged matters meeting the rule 1.220(a), Florida Rules of Civil Procedure, prerequisites of numerosity, commonality, typicality and adequacy of representation, and those matters were not in issue below nor are they here. The motion also asserted that the claim was maintainable under subdivision (b)(3) "in that common questions of law and fact predominate over individual issues, and a class action is superior to all other available methods for the fair and efficient adjudication of this case."[3] Appellees opposed class certification solely on the grounds that appellants could not meet the predominance and manageability requirements of subsection (b)(3). The four day evidentiary hearing focused upon these matters and, specifically, upon whether appellants had developed or could develop a methodology to show through *21 generalized, class-wide proof that the price fixing impacted each individual class member.
Appellants' evidence consisted of a written report and live opinion testimony of expert economist Peter Ashton, who said that an economic method called "incidence analysis" was generally accepted in the field of economics and could be used to show on a class-wide basis that a manufacturer-level price increase was passed through the distribution chain to impact each and every consumer. Mr. Ashton's opinion was conditioned, however, in several important respects. First, he recognized that incidence analysis had not been used before to demonstrate proof of pass on to individual consumers. Second, he admitted that certain assumptions concerning the marketplace had to be accepted in order for the incidence analysis to work, namely, a reasonably competitive market the characteristics of which would include a homogeneous product, cost-plus pricing, general uniformity of pricing, the absence of downstream buying power, and the absence of price protection agreements. Finally, he admitted that the existence of variability in the amount of pass-through throughout the distribution chain during the class period would preclude incidence analysis as a method to prove impact and damages in common. To refute Mr. Ashton's marketplace assumptions, appellees offered evidence that during the class period the real world thermal fax paper industry was not characterized by the criteria that Mr. Ashton himself admitted were required for his incidence analysis to be used.
At the conclusion of the evidentiary hearing, the trial court found that Mr. Ashton's testimony failed to meet the admissibility criterion that opinion testimony be applicable to the particular facts disclosed by the record, because his analysis was "based on simplifying assumptions that have little support in the real world of the fax paper industry." The court concluded, therefore, that the plaintiffs [appellants] had failed to meet their burden to come forward with a methodology by which they would be able to show by generalized proof that the alleged price-fixing conspiracy had impacted each class member individually.[4] The consequence, of course, was that proof of impact on each consumer would be left to be made on a transaction by transaction basis. The court, reasoning that the staggering problems of logistics thus created made the damage aspect of the case predominate and rendered the case unmanageable as a class action, denied class certification. At the same time the court entered a separate order striking Mr. Ashton's testimony from the record as being speculative and unreliable and, therefore, inadmissible.
Appellants first contend that, contrary to the teaching of such cases as Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir.1982), the trial court considered the merits of appellants' suit in reaching its determination to deny the motion for certification. However, the record does not bear that out. The lawsuit alleged an illegal conspiracy to fix the price of jumbo roll thermal fax paper, thereby causing consumers to pay more for fax paper. The court neither made any inquiry into nor required proof of the merits of the case. The proof which the court required was limited to the issue of whether the case was proper for class certification. A party seeking class certification has the burden of pleading and proving each and every element required under rule 1.220, Florida Rules of Civil Procedure, Arrowsmith v. Broward County, 633 So.2d 21 (Fla. 4th DCA 1993); Southern Bell Tel. & Tel. Co. v. Wilson, 305 So.2d 302 (Fla. 3d DCA 1974), cert. discharged, 327 So.2d 220 (Fla.1976), and the trial court has the obligation to conduct a rigorous analysis to *22 determine whether the elements of the class action rule have been satisfied. Baptist Hospital of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995).
Appellants next contend that in a class determination matter where a horizontal price fixing conspiracy is alleged, questions common to the class predominate over questions that may affect only individual class members, citing as authority In re Carbon Dioxide Antitrust Litig., 149 F.R.D. 229, 234 (N.D.Fla.1993); In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 518 (S.D.N.Y.1996); In re Folding Carton Antitrust Litig., 75 F.R.D. 727, 733 (N.D.Ill.1977); B.W.I. Custom Kitchen v. Owens-Illinois, Inc., 191 Cal.App.3d 1341, 1348, 235 Cal.Rptr. 228 (1987). We do not take this argument, nor the cited authorities, lightly, but we do not find them dispositive in an indirect purchaser case such as this. The trial court found that the issue of damages and impact in the case simply "does not lend itself to [a mechanical calculation] but requires separate mini-trials, of an overwhelming large number of individual claims" and that "the staggering problems of logistics thus created make the damage aspect of the case thus predominate...." See also Alabama v. Blue Bird Body Co., 573 F.2d 309, 324 (5th Cir.1978). This is especially so where the gravamen of the case is not the conspiracy but the individual injury sustained by each member of the class. See Windham v. American Brands, Inc. 565 F.2d 59, 65 (4th Cir.1977).
Appellants further argue that where class members purchase products in an anti-competitive market injury to each can be presumed, citing In re Folding Carton Antitrust Litig.; B.W.I. Custom Kitchen; In re Corrugated Container Antitrust Litig., 80 F.R.D. 244 (S.D.Tex.1978), but we think that such presumption should not arise in indirect purchaser cases due to the evidentiary complexities and uncertainties noted in Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).
The record supports the trial court's determination that the appellants failed to show that the predominance and manageability requirements were met in this case. The trial court's rejection of appellants' expert evidence and its acceptance of appellees' expert testimony supported its decision that there was no reasonable methodology for generalized proof of class-wide impact and damages. We conclude on this record that the trial court did not abuse its discretion in denying class certification.
Appellants have also appealed the order striking Mr. Ashton's testimony.[5] However, that non-final order is not appealable nor is it subject to review on this appeal from an appealable non-final order. The attempted appeal of that order is therefore dismissed. The order denying class certification is affirmed.
AFFIRMED.
STEVENSON, GROSS, JJ., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] The standard of review of orders on class certification is abuse of discretion. Jenne v. Solomos, 707 So.2d 1203 (Fla. 4th DCA 1998).
[2] This is called an "indirect purchaser lawsuit," because the Florida consumers proposed as class plaintiffs did not purchase the fax paper directly from the defendant manufacturers, but rather through middlemen and retailers.
[3] In addition, appellants alleged that because their claim would warrant final injunctive relief it would satisfy rule 1.220(b)(2). However, this subsection (b)(2) basis would not support class certification in this case because the predominate, if not exclusive, relief sought was monetary damages.
[4] That is, whether each member of the class sustained some damage, not the extent of such.
[5] While the court was certainly at liberty to reject such testimony, we are at a loss to understand why the court struck it from the record, particularly in the absence of a hearing on its admissibility. See Ramirez v. State, 651 So.2d 1164 (Fla.1995).