WARNER, J.
 

 In this litigation over contractual bonus payments to physicians, the trial court certified a class of physicians, all of whom had similar contracts with InPhyNet. While InPhyNet has challenged the certification order on multiple grounds, we need address only one. Because the trial court failed to conduct an appropriate analysis of whether common questions predominated over individual issues, and the proper analysis shows that the common questions do not predominate, we reverse.
 

 This case concerns the propriety of two related orders certifying a class of emergency room physicians currently or formerly employed by appellants, InPhyNet Contracting Services, Inc., and its parent Team Health, Inc., which in this opinion we refer to collectively as “InPhyNet.” InPhyNet contracts with hospitals around the state of Florida to provide physicians to staff hospital emergency rooms. In-PhyNet contracted with appellee, Dr. David Soria, to work as an emergency room physician at Wellington Regional Medical Center. To induce physicians to work in the emergency room, InPhyNet included a “Physician Incentive Plan” (PIP) as part of its contract with each physician it employed. With respect to the bonus payments, Dr. Soria’s contract stated:
 

 We maintain Physician Incentive Plans on a facility-by-facility basis. All facility plans must be approved by our affiliate CEO and are subject to revision without notice to You or Your approval. Amounts to be placed in the bonus pool for any facility shall be at Our sole discretion. To the extent that a bonus pool is established for a facility, eligibility and payment shall be in accordance with the criteria set forth below.
 

 To participate, a physician must work “full time” as defined in the agreement, not be in breach of his or her contract of employment, and have been working at least ninety days prior to the distribution date of the bonus payments. Each physician would be paid a portion of the bonus pool in accordance with a formula based upon various factors including the physician’s performance, productivity, teamwork, and length of service.
 

 Dr. Soria acted as InPhyNet’s Medical Director at Wellington Regional until In-
 
 *769
 
 PhyNet’s contract with Wellington was terminated in favor of a competitor who retained Dr. Soria. Because InPhyNet included a covenant not to compete in Dr. Soria’s contract, and InPhyNet believed that Soria had actively engaged with the competitor to terminate InPhyNet’s contract with Wellington Regional, InPhyNet sued Soria for breach of an employment agreement, breach of fiduciary duty, and tortious interference with a business relationship
 
 (“Soria I
 
 ”).
 

 Soria counterclaimed against InPhyNet in
 
 Soria I,
 
 raising a class action claim regarding the Physician Incentive Plan (“PIP”). We need not detail the complicated procedural moves in this case, but eventually Soria’s individual claim with respect to the bonus payments remained as a counterclaim in
 
 Soria I,
 
 and Soria filed a separate class action lawsuit, the present case
 
 (“Soria II
 
 ”).
 

 Soria alleged in his class action complaint that the contracts of the physicians employed by InPhyNet included Physician Incentive Plans substantially similar to the one contained in Soria’s contract with In-PhyNet. He further alleged that “[u]nder the Physician Incentive Plan Dr. Soria and the other class members were
 
 entitled
 
 to receive as incentive compensation a
 
 percentage of the profits
 
 from Defendants’ contract with the respective facilities, including Wellington Regional.” (emphasis supplied). Soria alleged that InPhyNet had failed to pay the class members all of the incentive compensation to which they were entitled, claiming InPhyNet had inflated its expenses through a “phantom” expense line of “Other Physician Benefits” which reduced the profits available for bonus payments.
 

 Soria alleged five different causes of action based upon the foregoing facts. First, he claimed that InPhyNet had breached an implied duty of good faith by failing to properly account for the revenues and expenses generated at each facility, specifically by including the “other Physician Benefits” which reduced the profits for the bonus distribution. This reduced payments to the class members. Second, he claimed that through this conduct InPhy-Net violated the Florida Deceptive and Unfair Trade Practices Act. Third, he alleged that InPhyNet had breached a fiduciary duty or engaged in constructive fraud in creating accounting statements which included the Other Physician Benefits, reducing the bonus pool available for the class members. Fourth, he alleged unjust enrichment on the ground that In-PhyNet retained benefits conferred by the class members but failed to properly compensate them. Finally, he also made a claim for conversion against InPhyNet.
 

 The class Soria identified in his complaint included physicians previously employed by InPhyNet in Florida within the past five years, with some exceptions. The class included well over 100 members. Soria alleged that the common questions of fact or law among all class members involved the establishment of the Physician Incentive Plan at each facility and InPhy-Net’s practice of inflating expenses and reducing profits of each facility through the use of the Other Physician Benefit expense item. His own claim was typical of those of the class, and he alleged that he was an adequate representative of the class. The complaint alleged that common issues would predominate over individual claims.
 

 After much procedural maneuvering and many discovery disputes, Dr. Soria moved to certify the class. InPhyNet requested an evidentiary hearing, contending that there were multiple disputed issues of fact in regard to the class certification. Nevertheless, the court conducted a non-eviden-tiary hearing lasting over two days with
 
 *770
 
 additional hearings after the initial ones. The court considered multiple depositions, documents, and affidavits, but took no live testimony.
 

 In the end, the court granted certification of a class consisting not only of the class alleged in Dr. Soria’s complaint but expanding it to include physicians currently employed at any of the InPhyNet facilities. The court’s order addressed each of the threshold requirements of class certification, namely: 1) numerosity, 2) commonality, 8) typicality, and 4) adequacy.
 

 As to the numerosity element, the trial court noted that there were at least 120 physicians who participated or were eligible to participate in appellants’ PIP plan, finding that “this number of proposed class members is sufficient to comply with the numerosity requirement” and that a separate joinder would be impracticable. As to commonality, the court concluded that Dr. Soria satisfied this requirement, reasoning that the putative class members “entered into substantially similar PIP agreements with the defendants” and that their claims “arise from the same course of conduct on the part of the defendants.” Specifically, the court noted that “all of the putative class members’ claims concern or relate to defendants’ use of the allegedly illegitimate expense category, ‘Other Physician Benefits,’ in their income statements, thereby reducing the amount of incentive benefits each physician received.”
 

 The trial court further found that, despite the presence of unique defenses pertaining to Dr. Soria’s conduct at Wellington Regional, Dr. Soria’s claims “are typical of the claims of the other class members,” noting that the claims all centered on the appellants’ alleged practice of deceptively deducting non-existent expenses. However, as to the adequacy prong, the trial court found that Dr. So-ria failed to meet the adequacy requirement based on the potential conflict of interest with the other class members due to his pending counterclaim in his individual capacity in
 
 Soria I,
 
 reasoning that “Dr. Soria could possibly compromise the best interests of the class as a whole for a favorable result in his own personal lawsuit.” Consequently, the trial court stopped short of certifying the class in its first order, but stated that the conflict would be resolved if Dr. Soria dismissed or abated the counterclaim in
 
 Soria I.
 

 The trial court then addressed the plaintiffs claims under rule 1.220(b)(3), finding that the defendants’ alleged use of an unsupported category of expense (“Other Physician Benefits”) in order to reduce the profitability at each facility where its physicians were employed, if true, presented common questions of law or fact which predominate over individual questions relating to the eligibility and/or amount of additional incentive benefits owed to any individual member of the class. The court thus found both that common questions predominated and that class resolution was a superior method of adjudication of the case.
 

 Dr. Soria filed a voluntary dismissal in
 
 Soria I.
 
 Consequently, the court entered a second order confirming class certification, and InPhyNet now appeals both orders.
 

 “Generally, we review a trial court’s certification of a class action using an abuse of discretion standard.”
 
 Olen Props. Corp. v. Moss,
 
 981 So.2d 515, 518 (Fla. 4th DCA 2008). However, where the trial court has decided issues of fact without an evidentiary hearing, we give its factual determinations less deference.
 
 See, e.g., Parker v. State,
 
 873 So.2d 270, 279 (Fla.2004) (explaining that deference to the trial court’s findings of fact does not fully apply where the findings are based on evidence other than live testimony). Be
 
 *771
 
 cause Florida’s class action rule is based on Federal Rule of Civil Procedure 23, Florida courts may generally look to federal cases as persuasive authority in their interpretation of rule 1.220.
 
 Seven Hills, Inc. v. Bentley,
 
 848 So.2d 345, 352-53 (Fla. 1st DCA 2003).
 

 The movant for class certification bears the burden of establishing all the requirements of Florida Rule of Civil Procedure 1.220.
 
 Chase Manhattan Mortg. Corp. v. Porcher,
 
 898 So.2d 153, 156 (Fla. 4th DCA 2005). The trial court must conduct a “rigorous analysis” to determine whether class certification is warranted.
 
 Execu-Tech Bus. Sys., Inc. v. Appleton Papers, Inc.,
 
 743 So.2d 19, 21-22 (Fla. 4th DCA 1999);
 
 Earnest v. Amoco Oil Co.,
 
 859 So.2d 1255 (Fla. 1st DCA 2003). Actual, not presumed, compliance with the rule is required.
 
 See Gen. Tel. Co. of Southwest v. Falcon,
 
 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982);
 
 Baptist Hosp. of Miami, Inc. v. Dentario,
 
 661 So.2d 319 (Fla. 3d DCA 1995).
 
 Baptist Hospital
 
 explains that this adherence is necessary because “the granting of class certification considerably expands the dimensions of the lawsuit, and commits the court and the parties to much additional labor over and above that entailed in an ordinary private lawsuit.”
 
 Id.
 
 at 321.
 

 Initially, the movant for class certification must establish the following four prerequisites, which are:
 

 (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.
 

 Fla. R. Civ. P. 1.220(a). These threshold requirements are often referred to as “the numerosity, commonality, typicality, and adequacy of representation elements of class certification.”
 
 Marco Island Civic Ass’n v. Mazzini,
 
 805 So.2d 928, 930 (Fla. 2d DCA 2001).
 

 In addition to satisfying Rule 1.220(a), a plaintiff also must satisfy one of the three subdivisions of Rule 1.220(b).
 
 [1]
 
 Rule 1.220(b)(3), often applicable in actions predominantly seeking damages, requires that common questions of law or fact predominate over any individual questions of the separate members, and the class action must be superior to other available methods for a fair and efficient adjudication of the controversy.
 
 Rollins, Inc. v. Butland,
 
 951 So.2d 860, 868 (Fla. 2d DCA 2006). In order to establish predominance, the class representative must “demonstrate the existence of a reasonable methodology for generalized proof of class-wide impact and damages.”
 
 Id.
 
 at 872 (internal quotation omitted). The predominance requirement is established if the class representative can prove his own individual ease and, by so doing,
 
 necessarily
 
 prove the cases for each of the other class members.
 
 Seminole County v. Tivoli Orlando Assocs. Ltd.,
 
 920 So.2d 818, 824 (Fla. 5th DCA 2006). While the predominance requirement parallels the commonality requirement under rule 1.220(a), the predominance requirement in subdivision (b)(3) is
 
 *772
 
 more stringent because common questions must pervade.
 
 Rollins,
 
 951 So.2d at 868.
 

 InPhyNet does not challenge the trial court’s findings as to numerosity or typicality. It does argue, however, that the trial court’s analysis is inherently flawed as to commonality and predominance. It also argues that the trial court erred in failing to conduct an evidentiary hearing which would show that common issues would not predominate over individual issues, given the fact that the PIP plans in each of the fifteen facilities staffed by In-PhyNet were different. No company-wide method of calculating the bonus pool existed.
 

 We agree that the court did not conduct a “rigorous analysis” of the predominance factor, but it is not necessary to remand for an evidentiary hearing. An examination of Dr. Soria’s complaint and the evidence produced shows that the common questions do not predominate. The trial court made no analysis, other than to state that the common question regarding the expense deduction for “Other Physician Benefits” predominated. It did not analyze any of the other issues involved in that determination.
 

 Recently, the Eleventh Circuit addressed the issue of predominance in
 
 Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.,
 
 601 F.3d 1159 (11th Cir.2010). The court explained that predominance can only be determined after considering the value of the resolution of the common class-wide issue will have to each individual class member’s claim. Common issues of fact and law predominate if they “ ‘ha[ve] a direct impact on every class member’s ef-fox*t to establish liability’ that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member.”
 
 Id.
 
 at 1170 (emphasis omitted) (quoting
 
 Vega v. T-Mobile USA, Inc.,
 
 564 F.3d 1256, 1270 (11th Cir.2009), in turn quoting
 
 Klay v. Humana, Inc.,
 
 382 F.3d 1241, 1255 (11th Cir.2004)). If a class representative must still present a great deal of individualized proof or argue individualized legal points to establish most or all of the elements of his claims, class certification is not appropriate.
 
 St. Joe Co. v. Leslie,
 
 912 So.2d 21, 24 (Fla. 1st DCA 2005). Where both liability and damages depend on individual factual determinations, resolution of these claims can only be decided on an individual basis.
 
 Terry L. Braun, P.A. v. Campbell,
 
 827 So.2d 261, 267 (Fla. 5th DCA 2002). “To assess the impact of a common question on the class members’ claims, a ... court obviously must examine not only the defendant’s course of conduct towards the class members, but also
 
 the class members’ legal rights and duties.” Sacred Heart,
 
 at 1170 (emphasis supplied). Thus, claims for breach of contract require an analysis of the parties’ agreement.
 

 Dr. Soria’s PIP plan, which he states is substantially similar to other class members’ plans, does not explain how the bonus pool is created. It simply states that a pool will be created at the “sole discretion” of InPhyNet. The complaint, however, states that the class members were entitled to a percentage of profits from the incentive plan. Nowhere in the written plan does InPhyNet represent that it will pay a percentage of the profits into a bonus pool; Yet, Dr. Soria’s entire complaint is based upon this representation and obligation on behalf of InPhyNet. Therefore, whether representations regarding the funding of the bonus pool were made by InPhyNet
 
 to its
 
 contract physicians must be determined before addressing the question of whether InPhyNet breached any obligations imposed as a result of that agreement.
 

 
 *773
 
 To prove his claim that the physicians were entitled to a percentage of InPhy-Net’s profits, Dr. Soria relied on testimony of a company practice, not any written contract, that physicians would receive 60% of earnings before interest and taxes as part of the PIP plan at each facility. Because there is no written obligation to pay a percentage of profits to the bonus pool, InPhyNet’s liability would have to be established by oral promises, if any, made to the individual physicians beyond the four corners of the PIP plans themselves. These claims would necessarily require individualized determinations about what was promised to each physician and the existence of a deceptive act for purposes of FDUTPA. Rather than being susceptible to class-wide proof, this case will ultimately require the very sort of mini-trials on liability which this court has explained are inappropriate for class treatment. See
 
 Porcher,
 
 898 So.2d at 157-58 (agreeing with the proposition that the trial court must determine whether there is one body of evidence that will resolve the issue for all class members, or if a mini-trial will be required to determine liability).
 

 This case is similar to
 
 Vega,
 
 where the Eleventh Circuit reversed a class action certification order concerning a T-Mobile incentive compensation plan. An employee brought a class action accusing T-Mobile of violating the plan by improperly charging back certain sales commissions previously earned by the employees. Although the Eleventh Circuit addressed multiple abuses of discretion with respect to the class certification order, the portion of the opinion most relevant to this case is the court’s discussion of the “predominance” element of Rule 23, which the court found to be “perhaps the central and overriding prerequisite for a Rule 23(b)(3) class.”
 
 Id.
 
 at 1278.
 

 The appellate court found the absence of analysis on that factor to be fatal to the class certification order: “The district court’s omission of an independent and substantial, let alone rigorous, analysis of Rule 23(b)(3), in addition to the facts that Vega has not established predominance and likely has not shown superiority, further demonstrates that certification of this class was an abuse of discretion.”
 
 Id.
 
 at 1279. The court noted that T-Mobile’s compensation program document cautioned that “T-Mobile retains sole discretion to determine what transactions qualify for commission payout.”
 
 Id.
 
 at 1273. Even assuming that the compensation program created a binding contract, which arguably could create common issues of law and fact, the court reasoned that the class issues would still lack predominance.
 
 Id.
 
 In explaining the commonality and predominance problems associated with the class representative’s claims, the court noted that “whether or not a given commission charge back was ‘unjust’ will depend on what each employee was told and understood about the commission structure,” and as a consequence the “uncommon and individualized nature of this critical inquiry, and its foundational importance to the liability determination for each class member, renders class certification inappropriate.”
 
 Id.
 
 at 1275.
 

 Similarly, whether or not a physician was promised that the bonus pool would be funded with a fixed percentage of the profits of InPhyNet must be determined on an individualized basis, because no written statement of the obligation exists. Like
 
 Vega,
 
 InPhyNet reserved “sole discretion” to determine the funding of a bonus pool. It is hard to imagine how one can translate “sole discretion” into a breach of an implied good faith duty in the accounting of the profits, without a representation on which a participating physician relied in entering into a contract with InPhyNet.
 

 
 *774
 
 Although there is a commonality of issues pertaining to the allegedly improper Other Physician Benefits deduction, individual issues regarding the formation of each contract, especially the inclusion of a particular bonus pool provision, will predominate over common issues such that class representation is not practical.
 
 See Black Diamond Props., Inc. v. Haines,
 
 940 So.2d 1176, 1178 (Fla. 5th DCA 2006) (holding that individual issues predominated where complaint was based upon allegation of misrepresentations in 500 separate oral contracts);
 
 Marino v. Home Depot U.S.A., Inc.,
 
 245 F.R.D. 729, 737 (S.D.Fla.2007) (denying certification of a FDUTPA class suit over carpet installation costs because such a class claim “would be an exercise in inefficiency, and the need for individualized determinations as to the existence of a deceptive act leads to the conclusion that common facts do not predominate as to Plaintiffs FDUTPA claim”).
 

 We therefore reverse the order granting certification of class status, as Dr. Soria has failed to prove that the common claim will predominate over the individual issues in this case.
 

 STEVENSON and LEVINE, JJ, concur.
 

 [1]
 

 . Without further comment, we hold that class certification is not appropriate in this case under either Rule 1.220(b)(1) or (b)(2).