On Motion for Rehearing

ROTHENBERG, J.
We deny the appellee’s motion for rehearing, but withdraw this Court’s opinion, dated June 15, 2011, and issue the instant opinion in its stead to clarify this Court’s findings.
This is an appeal from a non-final order certifying a class of automobile buyers who traded in a vehicle when they purchased a vehicle at Miami Automotive Retail (“MAR” or “Brickell Honda”), and MAR incorrectly estimated the amount owed on the trade-in vehicle. Because individual questions of law and fact predominate, and class representation is not superior to other available methods for the fair and efficient adjudication of the case, we conclude the trial court abused its discretion in certifying a class.

FACTS

In December 2004, Christine Baldwin (“Ms.Baldwin”) purchased a Honda CR-V from MAR, which sells automobiles at a dealership in Miami, Florida, under the tradename of Brickell Honda. At the time of the purchase, Ms. Baldwin was driving a leased Honda Civic. Pursuant to their agreement, Brickell Honda agreed to pay off the remaining amount Ms. Baldwin owed for the leased Honda Civic, and to treat the leased Honda Civic as a “trade-in.” As the exact amount Ms. Baldwin owed on her trade-in vehicle was not available at the time the parties negotiated the transaction and Ms. Baldwin signed the purchase documents, the parties calculated the amount still owing and the estimated trade-in value of the Honda CR-V, and Brickell Honda listed this estimated trade-in value on the purchase documents. Ms. Baldwin contends she was told that if the estimated payoff amount was less than what they had estimated, Brickell Honda would refund her the difference. As it turned out, the actual payoff amount was less than the estimated amount, but Bric-kell Honda did not notify Ms. Baldwin or give her a refund for the difference.
Ms. Baldwin sued, and, as relevant here, she contends Brickell Honda violated the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”) by failing to give her a refund for the difference between the estimated payoff amount on her trade-in and the actual amount Brickell Honda paid. On September 30, 2009, Ms. Baldwin filed a motion seeking class certification under sections 501.201, 501.976(9), and 501.976(11), Florida Statutes (2008), and to serve as the class representative.
Section 501.201 et seq., is the more generalized section regarding unfair or deceptive acts or practices, whereas section 501.976 specifically addresses unfair or deceptive acts or practices involving vehicles. Section 501.976, titled “Actionable, unfair, or deceptive acts or practices,” provides in relevant part as follows:
It is an unfair or deceptive act or practice, actionable under the Florida Deceptive and Unfair Trade Practices Act, for a dealer to:
[[Image here]]
(9) Obtain signatures from a customer on contracts that are not fully completed at the time the customer signs or which do not reflect accurately the negotiations and agreement between the customer and the dealer.
*851 [[Image here]]
(11) Add to the cash price of a vehicle as defined in s. 520.02(2) any fee or charge other than those provided in that section and in rule 69V-50.001, Florida Administrative Code. All fees or charges permitted to be added to the cash price by rule 69V-50.001, Florida Administrative Code, must be fully disclosed to customers in all binding contracts concerning the vehicle’s selling price.
After an evidentiary hearing, the trial court denied certification under sections 501.201 and 501.976(9), but granted certification under section 501.976(11) as follows:
All individuals and entities that purchased an automobile from Brickell Honda where: 1) an automobile encumbered by a lien was “traded-in” in the transaction; 2) the dealer overestimated the lien payoff on the trade-in; B) after paying off the lien, the dealer did not refund the resulting overcharge to the customer; and 4) no other complementary goods or services were provided in exchange for not refunding the overcharge.
In the order certifying the class, the trial court appointed Ms. Baldwin as class representative, disqualified Ms. Baldwin’s husband from serving as class counsel, and appointed counsel to represent the class. Brickell Honda appeals the order certifying the class under section 501.976(11); Ms. Baldwin has not appealed the denial of class certification under sections 501.201 and 501.976(9).

LEGAL ANALYSIS

A trial court’s order certifying a class is a non-final appealable order that is reviewed for an abuse of discretion. Fla. R. App. P. 9.130(a)(3)(C)(vi); Sosa v. Safeway Premium Fin. Co., 73 So.3d 91, 102-OS (Fla.2011); Ernie Haire Ford, Inc. v. Gilley, 903 So.2d 956, 958 (Fla. 2d DCA 2005); Adiel v. Elec. Fin. Sys., Inc., 513 So.2d 1347, 1347 (Fla. 3d DCA 1987). In certifying a class, the trial court is required to conduct a “rigorous analysis” regarding whether the case is one that meets the criteria set by Florida Rule of Civil Procedure 1.220. Baptist Hosp. of Miami Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995). “To obtain class certification, the proponent of class certification carries the burden of pleading and proving the elements required under rule 1.220.” Sosa, 73 So.3d at 106; see also InPhyNet Contracting Servs., Inc. v. Soria, 33 So.3d 766, 771 (Fla. 4th DCA 2010). “The discretion of a trial court is to be applied within the structure of rule 1.220.” Sosa, 73 So.3d at 103. The burden is only met if there is a “sound basis in fact, not supposition,” because the “granting of class certification considerably expands the dimensions of the lawsuit, and commits the court and the parties to much additional labor over and above that entailed in an ordinary private lawsuit.” Demario, 661 So.2d at 321.
To meet her burden, Ms. Baldwin was required to present evidence sufficient to meet each of the factors required under rule 1.220(a), and one of the three categories of factors listed in rule 1.220(b). As a prerequisite to class certification, the court must first conclude that:
(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and *852 represent the interests of each member of the class.
Fla. R. Civ. P. 1.220(a) (emphasis added). These requirements are summarized as numerosity, commonality, typicality, and adequacy, respectively.
In addition to numerosity, commonality, typicality, and adequacy, a class must meet one of the three categories listed in subsection (b) of rule 1.220. The class category Ms. Baldwin relies on requires that “the questions of law or fact common to the claim ... of the representative party and the claim ... of each member of the class predominate over any question of law or fact affecting only individual members of the class.” Fla. R. Civ. P. 1.220(b)(3) (emphasis added). In addition, “class representation must be superior to other available methods for the fair and efficient adjudication of the controversy.” Id. (emphasis added). These factors are summarized as predominance and superiority. Because Ms. Baldwin failed to meet the requirements of rule 1.220(a) and rule 1.220(b), the trial court abused its discretion in certifying the class.

Numerosity

 Ms. Baldwin has established nu-merosity. The numerosity requirement is met if “joinder is impracticable.” Fla. R. Civ. P. 1.220(a). Ms. Baldwin established numerosity by introducing a sixty-two-page Brickell Honda spreadsheet listing the instances when: (1) its estimate was accurate; (2) the lien payoff was overestimated; and (3) the lien payoff was underestimated. The spreadsheet shows 858 instances where Brickell Honda overestimated lien payoffs, resulting in an alleged windfall to Brickell Honda, which is sufficiently numerous to meet Ms. Baldwin’s burden. See Olen Props. Corp. v. Moss, 981 So.2d 515, 519 (Fla. 4th DCA 2008); Broin v. Philip Moms Cos., 641 So.2d 888, 889 (Fla. 3d DCA 1994).

Commonality

Ms. Baldwin also has established the commonality requirement. The primary concern regarding this element is whether the representative’s claims arise from the same practice or course of conduct that gave rise to the other claims, and whether the claims are based on the same legal theory. Sosa, 73 So.3d at 107; Powell. v. River Ranch Prop. Owners Ass’n, 522 So.2d 69, 70 (Fla. 2d DCA 1988); see also Olen Props., 981 So.2d at 520; Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 267 (Fla. 5th DCA 2002). In Broin, this Court recognized that “[t]he threshold of ‘commonality’ is not high.” Broin, 641 So.2d at 890 (quoting Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 473 (5th Cir. 1986)). Here, the object of the litigation is the overestimation of the lien payoff, and the relief sought is compensation for the difference between the overestimation of the amount the customer owed on the vehicle he/she relinquished to Brickell Honda as a “trade-in,” and the amount Brickell Honda actually paid for the vehicle. Thus, Ms. Baldwin has established commonality. See Smith v. Glen Cove Apartments Condos. Master Ass’n, 847 So.2d 1107, 1110 (Fla. 4th DCA 2003) (affirming class certification where the issue of whether defendant violated its statutory duty or was negligent in its failure to maintain the roofs, causing damage to members of the class, presented common questions of law and fact); Colonial Penn Ins. Co. v. Magnetic Imaging Sys. I, Ltd., 694 So.2d 852, 853-54 (Fla. 3d DCA 1997) (finding that the commonality element was met where the question of the statutory interest due on late PIP benefit payments was common to all class members and they shared a similar interest in the relief sought, interest due on late payments).

Typicality

Brickell Honda argues that Ms. Baldwin cannot satisfy the typicality ele *853 ment because, when making her purchase at Brickell Honda, the car she traded in was a lease. Brickell Honda claims that because Ms. Baldwin did not own her vehicle, her claim will differ from the class members who owned their trade-ins, and as a lessee she would never be entitled to a refund and therefore was not damaged. We disagree.
When computing the value of a trade-in vehicle, Brickell Honda must compute how much the customer still owes on the trade-in vehicle and how much Brickell Honda must pay to obtain clear title to the vehicle. If the customer owns the vehicle outright, value is easy to calculate and a definite amount is established at the time it is “traded in” to purchase the new car. If the customer has financed the trade-in vehicle and still owes money to the finance company, the amount owed, and which must be assumed by Brickell Honda, is subtracted from the value of the trade-in to get the amount credited to the customer towards the purchase of the new vehicle. A similar calculation must be made on a leased vehicle, which includes an option to purchase the vehicle at a predetermined price at the end of the lease. Brickell Honda must compute how much the lessee still owes on the lease, plus how much the lessee must pay at the end of the lease to purchase the vehicle. The total of these two numbers determines the amount which must be paid to obtain clear title to the automobile. Thus, in determining the ultimate purchase price of the new Honda, Brickell Honda must compute its costs in obtaining Ms. Baldwin’s trade-in.
For example, when Ms. Baldwin traded in her leased vehicle to Brickell Honda, she still owed twenty-four monthly payments of $250.84 on her five-year lease, totaling $6020.16. The residual-value purchase price of the vehicle at the end of the lease was $7339 plus applicable taxes. Both amounts needed to be satisfied to transfer ownership of the vehicle to Ms. Baldwin (or Brickell Honda) when using the vehicle as a trade-in. This amount was factored into Ms. Baldwin’s purchase price for the new vehicle transaction. A similar analysis applies to satisfy the lien on an owned vehicle. Ms. Baldwin claims that in computing these two amounts, Brickell Honda overestimated the amount still owed on her lease, and by overestimating this cost, she was overcharged on the end price of her new vehicle.
We conclude that whether the trade-in vehicle is owned outright, financed, or leased, are differences without a distinction. The actual amount Brickell Honda must pay or credit the customer to obtain the trade-in vehicle will ultimately determine the balance owed by the customer, regardless of whether Brickell Honda must pay a lienholder to: (1) close out a lease and purchase a leased car at the lease contract’s agreed-upon residual value (leased car); (2) pay off a loan for a car that is owned but subject to a security interest lower than its market value (equity); or (3) purchase the vehicle from the owner. We therefore reject Brickell Honda’s argument that Ms. Baldwin did not satisfy the typicality requirement because her trade-in vehicle was a leased vehicle.
The record, however, reflects that Ms. Baldwin does have a typicality problem. Although Ms. Baldwin and the putative class members possess the same legal interest (return of the overestimated fees charged), Sosa, 73 So.3d at 114, Brickell Honda’s defenses to her specific unfair trade practices claim defeat typicality. See Green v. FedEx Nat’l, LTL, Inc., 272 F.R.D. 611, 615 (MJD.Fla.2011) (holding that “[t]ypicality may be destroyed by the existence of unique defenses that would preoccupy the named plaintiff to the detriment of the interests of absent class mem *854 bers”). The record reflects that Brickell Honda’s estimate regarding the balance owed on Ms. Baldwin’s leased vehicle was based on Ms. Baldwin’s representations to Brickell Honda, and the difference between. the estimated amount and the amount ultimately- paid by Brickell Honda to satisfy the lease was, in large part, created by Ms. Baldwin who inadvertently paid an additional monthly lease payment after she signed the contract with Brickell Honda. In fact, Ms. Baldwin conceded at the class certification hearing that she never notified Brickell Honda that she made an additional payment after signing the contract, thereby reducing the balance owed, and she never sought reimbursement for this payment from the leasing company or Brickell Honda.
Thus, although Ms. Baldwin’s claim meets' the typicality requirement, Brickell Honda’s defenses to Ms. Baldwin’s claim are unique; these defenses will preoccupy the named plaintiff to the detriment of the interest of absent class members; and Ms. Baldwin’s representations and actions when she signed the contract and thereafter will be pivotal. We, therefore, conclude that the trial court abused its discretion in failing to address these concerns and in concluding that typicality had been demonstrated.[1]

Adequacy

We also conclude that Ms. Baldwin did not satisfy her burden in demonstrating that she is an adequate class representative, especially since her husband was disqualified as class counsel. Our finding is based on Ms. Baldwin’s failure to offer any evidence on her ability, or the ability of appointed class counsel, to assume the costs to litigate the case on behalf of the class. The trial court disqualified Ms. Baldwin’s husband as class counsel, whose two former law firms have asserted charging liens for costs that Ms. Baldwin has not paid in prosecuting this case. The record also reflects that, based on Mr. Baldwin’s misconduct in communications he sent to potential class members, the trial court prohibited Mr. Baldwin from further solicitation of possible class members in the pre-certification stage of the case.
Although Ms. Baldwin’s current class counsel has experience handling class action cases, and he has worked with Mr. Baldwin in other litigation, he was not materially involved in the early stages of this litigation and did not offer any evidence as to his willingness and ability to absorb the costs in prosecuting this case as a class action. Because neither Ms. Baldwin nor class counsel has offered any evidence on this issue, we conclude that adequacy has not been established, and thus the trial court abused its discretion in certifying the class. See, e.g., R.W. Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D.Fla.1990) (noting that to meet the adequacy showing, “Plaintiffs must demonstrate that they will vigorously prosecute the action, and provide both adequate financing and competent counsel”); see also Rolex Emps. Ret. Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 666 (D.Or.1991) (finding that to be adequate, a class representative must be able to “ ‘check the otherwise unfettered discretion of counsel in prosecuting the suit,’ not only with respect to the facts of the case but also with respect to economic consequences of the suit”) (quoting Weisman v. Darneille, 78 *855 F.R.D. 669, 671 (S.D.N.Y.1978)). If this was the only deficiency in the certifications of this class, we would remand for further proceedings, but due to our findings regarding predominance and superiority, remand is unnecessary.

Predominance and Superiority

The predominance requirement is similar to commonality because “both require that common questions exist,” but the “predominance requirement is more stringent since common questions must pervade,” rather than merely exist. Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 639 (Fla. 3d DCA 2006); see also InPhyNet, 33 So.3d at 771-72 (holding that “[w]hile the predominance requirement parallels the commonality requirement under rule 1.220(a), the predominance requirement in subdivision (b)(3) is more stringent because common questions must pervade”). Thus, “Florida Rule of Civil Procedure 1.220(b)(3) requires that common questions of law or fact predominate over any individual questions of the separate members, and that class representation is superior to other available methods for the fair and efficient adjudication of the controversy.” Kia Motors Am. Corp. v. Butler, 985 So.2d 1133, 1136 (Fla. 3d DCA 2008). To satisfy its burden, the class must therefore establish that common issues of fact predominate over the factual issues unique to each plaintiff. Black Diamond Props., Inc. v. Haines, 940 So.2d 1176, 1178 (Fla. 5th DCA 2006). The reason for this requirement is obvious. As the Fifth District aptly stated: “When significant individual issues exist, requiring proof from each member of the class, class representation is not appropriate because the lawsuit becomes unmanageable, thereby defeating the very purposes for which class representation is authorized.” Id. at 1178.
Thus, under Florida Rule of Civil Procedure 1.220(b)(3), “the trial court must determine whether the purported class representatives can prove their own individual case and, by doing so, necessarily prove the cases for each of the [class members] ... [and] [i]f they cannot, a class should not be certified.” Kia Motors, 985 So.2d at 1136; accord InPhyNet, 33 So.3d at 771.
Ms. Baldwin contends that because the trial court certified the class under section 501.976(11), the communications between Brickell Honda and Ms. Baldwin; Brickell Honda’s representations to Ms. Baldwin; and Ms. Baldwin’s representations to Bric-kell Honda, are irrelevant. Ms. Baldwin claims the only relevant issues under section 501.976(11) are whether Brickell Honda overestimated the lien payoff and whether Brickell Honda refunded the overestimated amount. Thus, Ms. Baldwin argues that no individualized issues exist. We respectfully disagree.
We begin with the statute itself. Section 501.976(11) provides that it is a FDUTPA violation to:
Add to the cash price of a vehicle as defined in s. 520.02(2) any fee or charge other than those provided in that section and in rule 69V-50.001, Florida Administrative Code. All fees or charges permitted to be added to the cash price by rule 69V-50.001, Florida Administrative Code, must be fully disclosed to customers in all binding contracts concerning the vehicle’s selling price.
(emphasis added). As to Ms. Baldwin’s contract, the estimation of the trade-in value of her leased vehicle was not an add-on to the price of the vehicle she was purchasing — it was a deduction, and that amount was fully disclosed, in writing, to Ms. Baldwin in her sales contract with Brickell Honda. Additionally, her contract specifies that the trade-in amount deduction was a “Trade-In Allowance.” Thus, the only way Ms. Baldwin potentially could *856 prevail at trial is if she is able to prove oral representations she claims Brickell Honda’s sales representative made to her. And, as the trial court correctly concluded, Ms. Baldwin “did not satisfy the Court’s concerns regarding the need for individualized inquiry with respect to the other claims against [Brickell Honda] [in other words, her section 501.201 et seq. and section 501.976(9) claims], due to the need for each putative class member to testify as to them individual experience with [Brickell Honda].” Such individualized factual determinations defeat the predominance requirement.
To satisfy the predominance requirement, Ms. Baldwin was required to allege that similar representations she claims were made to her were also made to the other class members. Ms. Baldwin, however, has made no such claim, nor has she submitted any record evidence that similar representations were made to any of the other class members. And, as is readily obvious, Ms. Baldwin not only will have to prove her claim, but also she will have to prove each individual class member’s claim because each class member’s claim will require individualized determinations about what was represented or promised to each class member. Such individualized factual determinations defeat the predominance requirement.
In addressing the predominance issue, in InPhyNet, the Fourth District reversed class certification based on its conclusion that although there was commonality as to some of the issues, individual issues regarding the formation of each contract would predominate over the common issues, thus defeating the purpose of class treatment. InPhyNet, 33 So.3d at 774. The Fourth District concluded that “[i]f a class representative must still present a great deal of individualized proof or argue individualized legal points to establish most or all of the elements of his claims, class certification is not appropriate,” and because the determination of both liability and damages as to each class member required individualized factual findings, class treatment was inappropriate. Id. at 772. Specifically, the InPhyNet court concluded that:
Because there is no written obligation to pay a percentage of profits to the bonus pool, InPhyNet’s liability would have to be established by oral promises, if any, made to the individual physicians beyond the four corners of the PIP plans themselves. These claims would necessarily require individualized determinations about what was promised to each physician and the existence of a deceptive act for purposes of FDUTPA. Rather than being susceptible to class-wide proof, this case will ultimately require the very sort of mini-trials on liability which this court has explained are inappropriate for class treatment.
Id. at 773.
Similarly, the Fifth District found that class certification was inappropriate in Black Diamond, where “the very core of [the] plaintiffs’ complaint [was] the allegation that oral and written misrepresentations took place in 500 separate oral contract transactions spanning many years and involving numerous sales personnel.” Black Diamond,, 940 So.2d at 1178; see also Egwuatu v. S. Lubes, Inc., 976 So.2d 50, 53-54 (Fla. 1st DCA 2008) (affirming the trial court’s order denying class certification in a FDUTPA action regarding certain fees charged to customers receiving motor vehicle services where the trial court found that an individual inquiry would be required to determine the facts of each of the commercial customer’s experience with the defendants, and therefore, class certification would be impractical, thereby defeating the predominance fac *857 tor); Volkswagen of Am., Inc. v. Sugarman, 909 So.2d 923, 924 (Fla. 3d DCA 2005) (finding that under Florida law, the predominance requirement “is not satisfied when the claims involve factual determinations which are unique to each plaintiff”).
Ms. Baldwin predicates her FDUTPA claim, as did the plaintiffs in InPhyNet, Black Diamond, and Egwuatu, on specific representations she claims Brickell Honda’s salesman made to her, and which she speculates may have been made to other class members regarding the value of their trade-in vehicles. Because there are no written obligations requiring Brickell Honda to notify a customer or to make an adjustment when there is a discrepancy between the estimated balance owed to a finance company or on a lease and the amount Brickell Honda actually paid to obtain clear title on a trade-in vehicle, and because Ms. Baldwin’s contract identifies the amount being deducted from the sales price as a “Trade-In Allowance,” individualized proof and individualized findings will be required as to each class member, resulting in the sort of mini-trials which defeat the purpose of class treatment. Because the claims “involve factual determinations which are unique to each plaintiff,” the predominance requirement has not been satisfied. Volkswagen, 909 So.2d at 924.
While not dispositive, Ms. Baldwin additionally argues that because the claims alleged here are under FDUTPA, collective proof of reliance is appropriate and individual mini-trials regarding reliance will not be required, and cites to Latman v. Costa Cruise Lines, N.V., 758 So.2d 699 (Fla. 3d DCA 2000). We are not persuaded by this argument because, while Lat-man suggests that in a case involving a uniform representation, individual reliance may not be necessary under FDUTPA, in this case, the communications made by and to each customer, as well as the actions taken by the parties, will be pivotal in determining the existence of a deceptive act as framed by the pleadings. In Lat-man, every customer received the same misrepresentation, that the “port charge” item on their ticket was a pass-through charge paid to a port, while in this case each plaintiff will have received a different communication and may have reacted differently. See Latman, 758 So.2d at 703. FDUTPA requires proof of each individual plaintiffs actual (not consequential) damage and defendant’s causation of damage, requiring evidence regarding how specific misrepresentations to individual Brickell Honda customers decreased the value of their deal for a car. See City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. 4th DCA 2008); Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984). As the trial court’s order certifying a class acknowledged, each plaintiff in this case will have to show that “no other complementary goods or services were provided in exchange for not refunding the overcharge.” Thus, each customer’s interactions with Brickell Honda must be examined. See, e.g., Kia Motors, 985 So.2d at 1140 (finding no reasonable methodology for class-wide proof of damages).
Each customer’s interactions with Bric-kell Honda will affect the customer’s membership in the class, and the viability of his or her claim, as illustrated by Ms. Baldwin’s actions in this case. As already noted in this opinion, Brickell Honda’s estimate regarding the amount it expected to pay to obtain Ms. Baldwin’s leased vehicle as a trade-in was based on Ms. Baldwin’s representations to Brickell Honda as to the amount she still owed on her lease. In fact, the record reflects that the difference between the estimated amount Ms. Baldwin owed on the lease and how much Brickell Honda ultimately paid to satisfy the lease was, in large part, created by *858 Ms. Baldwin when she inadvertently paid an additional monthly lease payment after she signed the contract with Brickell Honda. And, as also previously noted, Ms. Baldwin admits she never notified Brickell Honda that she made a payment after she purchased the new vehicle and traded in her leased vehicle to Brickell Honda, and she never sought reimbursement for the extra payment she made on the lease from the leasing company or from Brickell Honda. Thus, as the facts regarding Ms. Baldwin’s own claim demonstrate, mini-trials will be necessary to determine what representations were made by the customer and/or Brickell Honda at the time of the transaction, and the cause of the miscalculation.
Additionally, the payoff ledger relied on by Ms. Baldwin at the class certification hearing to establish the number of times Brickell Honda overestimated the payoff amount reflects that Brickell Honda equally correctly estimated, overestimated, and underestimated the amount owed on the trade-in value. Moreover, the record demonstrates that some customers received credit for the difference between the estimate and the amount Brickell Honda actually paid for the trade-in vehicle. Thus, while reliance on a particular representation need not be proven, the communications between the parties and their subsequent actions will be necessary to prove or disprove whether Brickell Honda’s actions were deceptive. See Egwuatu, 976 So.2d at 53-54.
Ms. Baldwin cannot cure the lack of predominance even as to claims that rely upon the portion of FDUTPA, section 501.976(11), that penalizes the absence of certain written elements in an automobile sales contract. Not only does this provision not create an exemption to rule 1.220(b)(3), it only addresses one of the elements necessary for proof of Ms. Baldwin’s claim. Subsection (11) provides an example of a deceptive act. But under Florida law, a FDUTPA claim has three elements: (1) a deceptive act; (2) causation; and (3) damages. See Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006). Thus, even assuming this provision provides for class-wide proof of the first element in this case, there must still be individualized proof as to causation and damages. As noted above, even Ms. Baldwin’s causation and damages are in question based upon her testimony, and thus individual class members would need to come forth with proof of causation and damages.
Where the facts necessary to determine liability are based upon the defendant’s interactions with specific plaintiffs, individual issues predominate over class-wide proof. In Chase Manhattan Mortgage Corp. v. Porcher, 898 So.2d 153, 158 (Fla. 4th DCA 2005), the Fourth District reversed class certification where the plaintiff homeowners claimed harm based upon errors in calculating when payments were received, which allegedly created incorrect interest charges on their mortgage. The Porcher court determined that whether an individual plaintiffs payment in a specific month was received within the grace period, and should have avoided interest, would predominate in determining liability. Porcher, 898 So.2d at 158.
Conversely, in Sosa, the Florida Supreme Court concluded that the putative class members had satisfied the predominance requirement “because the common class questions for Sosa and the putative class members require generalized proof and not individual inquiries or mini-trials.” Sosa, 73 So.3d at 113.
Thus, unlike Sosa and similar to Porch-er, there are questions that will predominate, and, therefore, defeat class certification, such as: (1) whether the consumer *859 accurately stated the payoff balance (thus relieving Brickell Honda of possible liability since it did no “adding” to the purchase price); (2) whether the consumer received oral assurances regarding Brickell Honda’s estimation (rather than the required written elements of the sales contract); or (8) whether the consumer received other benefits that made the estimation immaterial to the purchaser’s decision (thus affecting whether the consumer was damaged).
Ms. Baldwin also cannot meet the superiority requirement. “To find superiority, a court must find all other methods of resolving the issues in a case to be inferior to a class action.” Kia Motors, 985 So.2d at 1141 (quoting Sanneman v. Chrylser Corp., 191 F.R.D. 441, 455 (E.D.Pa.2000)). In this case, class treatment is not superior because the harm Ms. Baldwin alleges arises from case-specific interactions, and every plaintiff would have to describe what representations were made to that plaintiff and how such representations affected them in negotiating, executing, and eventually paying off their vehicle purchase with Brickell Honda.
Brickell Honda’s representative testified that every customer, and every trade-in transaction, is unique to that customer’s desires and abilities for the deal made at that time, which makes case-by-case examination necessary. See Ortiz v. Ford Motor Co., 909 So.2d 479, 481 (Fla. 3d DCA 2005) (noting, in a case involving damages for decreased value to a vehicle alleged as “failure prone,” “the equities surrounding each class member’s purchase of their vehicle” required an individualized inquiry). Moreover, examining how Brickell Honda handled these negotiations, and whether such handling violated FDUTPA would be impractical on a class-wide or aggregate basis. See, e.g., Egwuatu, 976 So.2d at 53 (finding a class action impractical where the defendant communicated the alleged misrepresentation to its customers through a “variety of methods over the years”).
Further, class treatment is not a superi- or method for resolving the issues in this FDUTPA claim where the common facts do not predominate, and individual plaintiffs may bring their own suits, as FDUT-PA provides attorney’s fees to a prevailing plaintiff. See § 501.2015(1), Fla. Stat. (2008); Marino v. Home Depot U.S.A., Inc., 245 F.R.D. 729, 737 (S.D.Fla.2007) (denying class certification in FDUTPA claim, where the plaintiffs theory of deception was based on omissions by Home Depot regarding its price calculations, which would require numerous mini-trials, and where attorney’s fees are awarded to the prevailing plaintiff, and finding that “even in cases where the damages are small, the cost of bringing a suit would not deter potential FDUTPA plaintiffs”).

CONCLUSION

The trial court abused its discretion in certifying a class without determining the adequacy of Ms. Baldwin and her counsel to represent the class. More importantly, the trial court abused its discretion in certifying the class because Ms. Baldwin’s claims require determination of individual issues regarding representations and negotiations between each consumer and Bric-kell Honda as to the payoff amount of the trade-in vehicle. These individual determinations mean that individual issues of fact and law will predominate over common questions of fact and law. In addition, these individual determinations render class treatment impractical, and, therefore, not superior to individual adjudication. FDUTPA does not impose a threshold for claims, and even if the damages incurred by each plaintiff may be small, where attorney’s fees are awarded *860 to the prevailing plaintiff, the cost of bringing a suit should not deter potential plaintiffs. Therefore, class treatment is not necessary to ensure that Ms. Baldwin’s claims are properly and efficiently adjudicated. Accordingly, we reverse the order certifying the class.
Reversed.

. Although we are mindful of our standard of review, see Sosa, 73 So.3d at 102-03 (holding that the trial court's factual findings are reviewed under the abuse of discretion standard), because the trial court's order performs -no analysis and simply makes the requisite findings in a conclusory fashion, a complete review of the record was required to determine what evidence, if any, was presented to support these findings.