# Third District Court of Appeal

## State of Florida

Opinion filed September 16, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3137
Lower Tribunal No. 11-18732
_____

**Celebrity Cruises, Inc.,**
Appellant,

vs.

**Jerry Rankin, M.D., et al.,**
Appellees

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Mase, Lara, P.A., and Richard D. Lara, Cameron W. Eubanks, and Lauren DeFabio, for appellant.

Meister Law, LLC, and Michael F. Guilford, P.A.; Russo Appellate Firm, P.A., and Elizabeth K. Russo and Christopher J. Bailey, for appellees.

Before SALTER, FERNANDEZ, and LOGUE, JJ.

LOGUE, J.,

Celebrity Cruises, Inc. ("Cruise Line"), appeals an order certifying a class of doctors who worked under contract with the Cruise Line. For the reasons explained below, we affirm.

## FACTS AND PROCEDURAL HISTORY

According to the complaint, the Cruise Line contracted with the Doctors to pay them a commission on "total medical revenues." When paying commissions, however, the Cruise Line excluded revenues generated by the sale of medications. The underlying dispute, therefore, is whether the Doctors were contractually entitled to commissions on medication sales.

In internal emails, the Cruise Line's management team discussed whether doctors subject to the contract were entitled to commissions on medication sales:

> According to the signed contracts, physicians' commission should be on total medical revenue (procedure and medication sales) as opposed to commission on procedure only. Since current medical settlement pays commission on procedure only, the difference needs to be calculated based on what is stated in the contract (commission on total revenue) for the contract period stated in the contract.
>
> Please prepare retro pay amount as lump sum payment, and this needs to take place as soon as possible.

The Doctors filed suit, alleging a breach of contract and seeking class certification under Florida Rule of Civil Procedure 1.220(b)(3). In opposition to class certification, the Cruise Line argued that common issues would not predominate over individual ones: "[A]n analysis of each individual physician's

understanding of the terms of their agreement with [the Cruise Line] . . . will necessarily overwhelm any issues that could be deemed common to this class."

The Cruise Line submitted depositions of several class members in an attempt to support its contention. The depositions reflected that one physician was unaware of the relevant contract term until recently, another physician was aware of the term but assumed the Cruise Line did not pay a commission on medication sales, and yet another physician claimed that every physician knew he or she was contractually entitled to a commission on medication sales. An additional point raised by the Cruise Line concerned the timing of each physician's objections to the alleged failure to pay commissions on medication sales, as some voiced concerns shortly after signing their contracts, while others did not object until the filing of the lawsuit.

After a hearing on the motion for class certification, the trial court granted the motion and certified the following class definition:

> All ship physicians of [the Cruise Line] who worked during the time period of September 17, 2004, to December 31, 2009, and had contracts that provided for payment based upon a commission on total medical revenue without a specific exclusion for medication/medicine that were not paid a percentage of the medication/medicine sales.

This appeal followed.

## ANALYSIS

3

"[A]n appellate court reviews a trial court's grant of class certification for an abuse of discretion." Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 102 (Fla. 2011). Of course, that discretion is to be applied within the structure of rule 1.220. Id. at 103. At the class certification stage, the inquiry does not focus on whether the class representatives will prevail at trial. Id. at 105. "Instead, the focus is on whether a litigant's claim is suited for class certification and whether the proposed class provides a superior method for the fair and efficient adjudication of the controversy." Porsche Cars N. Am., Inc. v. Diamond, 140 So. 3d 1090, 1095 (Fla. 3d DCA 2014) (quotations and citation omitted). "However, if consequential to its consideration of whether to certify a class, a trial court may consider evidence on the merits of the case as it applies to the class certification requirements." Sosa, 73 So. 3d at 105.

The prerequisites to class certification are well known: numerosity; commonality; typicality; and adequate representation. Fla. R. Civ. P. 1.220(a). In addition to meeting these threshold requirements, the class must fall within one of the three different types of class actions established in rule 1.220(b). Sosa, 73 So. 3d at 106; Diamond, 140 So. 3d at 1095.

This case was plead as a (b)(3) class action. "In a (b)(3) class action, not all issues of fact and law are common, but common issues predominate over individual issues." Id. at 1095-96 (citing Fla. R. Civ. P. 1.220(b)(3)). This occurs

4

"when, considering both the rights and duties of the class members, the proof offered by the class representatives will necessarily prove or disprove the cases of the absent class members." Id. at 1096. As the Florida Supreme Court explained in Sosa:

> [A] class representative establishes predominance if he or she demonstrates a reasonable methodology for generalized proof of class-wide impact. A class representative accomplishes this if he or she, by proving his or her own individual case, necessarily proves the cases of the other class members.

73 So. 3d at 112 (internal citation omitted). The Court added that the class representative's case must not merely raise a common question; the proof of the class representative's case must also "answer the question." Diamond, 140 So. 3d at 1096 (citing Sosa, 73 So. 3d at 111). The United States Supreme Court has echoed this sentiment:

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Wal–Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (citation omitted).

In this case, common issues predominate over individual ones. This is not a case where the class members seek commissions or bonuses based upon unwritten contracts with potentially different terms for different class members. See, e.g., InPhyNet Contracting Servs., Inc. v. Soria, 33 So. 3d 766, 773 (Fla. 4th DCA

5

2010) (holding common issues did not predominate over individual issues in an action against a staffing agency for failure to pay bonuses, where no written statement of obligation existed). Nor is this a case where the class members failed to allege the existence of a common contract under which the company employed all class members. See, e.g., Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009).

Instead, here, the breach of contract claim is based on the Cruise Line's refusal to pay the class members who were the beneficiaries of the identical written contractual provision. The case poses the same basic legal question for all class members: whether, according to the signed contracts, the Doctors' commissions should be based on total medical revenue, or whether the revenue from the sale of mediations should be excluded. The answer to this question will essentially resolve the core dispute between the Cruise Line and the class members.

Of course, individual issues remain. The damage calculation, for example, will be different for each class member, although it appears the same, mechanical method can be used to calculate the class member's damages. In these circumstances, individual damage calculations do not predominate over the common issue of liability under the contract. See Morgan v. Coats, 33 So. 3d 59, 66 (Fla. 2d DCA 2010) ("[A]lthough there will be some factual variations among the claims of each class member, those variations go to the determination of each

6

class member's damages rather than to the elements of the claims. The actual claims are based on the same legal theories and are based on the same course of conduct by the sheriff."). Likewise, if questions of waiver and awareness of the existence of their contractual right to the commission exist for individual class members (and we are not clear how those issues serve in this case to defeat a contractual claim), those issues can be resolved expeditiously within the context of the class action in the same manner that individual damages are resolved. Those individual issues do not stop the interpretation of the core contractual provision from predominating here. See Sosa, 73 So. 3d at 111 ("Florida courts have held that common questions of fact predominate when the defendant acts toward the class members in a similar or common way.").

For these reasons, we affirm the trial court's decision to certify the class.